## THE COLLINS COMPANY *v.* COES and others.

*(Circuit Court, D. Massachusetts. July 24, 1880.)*

1. PATENT — RE-ISSUE No. 5,294 OF No. 50,364 SUSTAINED — MONKEY-WRENCHES — COMBINATION—ADDITION OF NUT TO COES' WRENCH.

LOWELL, C. J. This suit is brought upon the second re-issue, No. 5,294, February 25, 1873, of a patent issued to Lucius Jordan and Leander E. Smith, in 1865, No. 50,364. The first re-issue is not in evidence, and the propriety and regularity of the second is not attacked.

The invention relates to wrenches having a movable jaw, commonly called monkey-wrenches. Loring Coes, one of the defendants, made and patented the great improvement in these tools more than forty years ago, and his wrenches have superseded the older forms, and are familiar to all machinists. He arranged a rod parallel to the main bar, and upon this rod worked the movable jaw by means of a rosette, which did not move up and down, but remained constantly in a convenient position, close to the thumb of the operator.

Coes made a plate of iron, called the step plate, which fitted over the main bar, and projected on one side to receive the rod which was pivoted into it. On the side towards the hand this step plate had a recess, operating as a ferrule, to receive the wooden handle or sleeve, which was shipped over

v.3,no.4—15

the iron bar and secured by a nut at the end. The handle and its nut kept the step bar in place.

The improvement set forth in the re-issued patent of the plaintiffs may be said to consist of cutting the step plate in two, lengthwise, and putting a screw thread upon the part nearest the hand, which thus becomes a nut, having a recess for the wooden handle. The utility of this change is said to be (1) that the step plate is secured by the upper nut, independently of the nut at the end of the handle, and thus, if the handle becomes loose, the smooth and regular working of the rod on the step plate is not affected; (2) that, by securing the step plate to the main bar, or iron body of the wrench, by this independent nut, much of the strain which in Coes' wrench is brought upon the wooden handle, which is the weakest part of the tool, is transferred to the solid iron bar. The evidence bears out this claim of utility. The same result of transferring the strain to the bar has since been reached by G. C. Taft, in a patent now owned by the defendants, but in a wholly different way.

It is ably argued for the defendants that the mere addition of a nut to the Coes wrench has not invention enough to be patentable. Considering, however, that the change, simple as it seems, was not made for some 25 years after Coes' wrench was patented and came into common use, and that there appears to be a value in it which others have obtained in a different way, it seems to me that the combination is new and useful in the sense of the patent law.

There is a disputed question of fact, whether the "Dixie" wrench had a nut which resembled the plaintiffs'. That was not a patented tool, but was made and sold to a considerable extent before the Coes wrench became known. It seems to me to be proved that this wrench was sometimes made with a nut, into which the handle of the wrench was inserted; but it was not always made so, and the specimen in court does not have that construction. The "Dixie" wrench defeats the second claim of the re-issued patent in suit, which is broadly for a nut combined with the wrench bar, and recessed to receive the handle. But there is no reason to suppose that the assign-

ors of the plaintiffs knew of this form of wrench, which had been superseded by the Coes tool long before their original patent was granted.

Nor does it appear that the "Dixie" wrench, with a recessed nut, was well known to all competent mechanics. This was not a Coes wrench. It had no rod parallel to the bar; but the movable jaw was worked upon the bar itself, a form of tool which no one has been willing to use since Coes' invention was made public. Therefore, the plaintiffs' wrench is not, or was not, when made, such a mere obvious appropriation of the Dixie nut, for the use of the Coes wrench, as to be an alternative fairly within the knowledge of a constructor.

The first claim of the plaintiffs' patent is: "The step, combined with the wrench bar and supported by the nut, F, or its equivalent, at the place where the step is connected with the bar, in such manner that the step can be removed from the bar without cutting or abrasion of parts."

The last clause of this claim refers to a statement in the specification that steps (that is step plates) have before been made solid with the bar, and that others had been riveted to reach a similar result. This narrative of what was old appears to have been inserted by order of the patent office; and it is doubtful whether such solid or riveted step plates had, in fact, been used, though they had been described in rejected applications for patents. The courts have no right to disregard such a disclaimer, without which the patent might never have been granted; and the fact that some such wrenches had been made is taken for granted by me; but I still think the movable nut a patentable improvement.

The defendants have used the old Coes recessed step plate with the addition of a small nut inserted in the recess. This is plainly an infringement of the first claim, because the nut performs the usual office of a nut, and the recess in the step plate, though old, was not before combined with a nut at this point; and it makes no difference in the combination of the step plate and nut whether you put the recess into the one or the other. The old nut at the end of the handle is not the equivalent of this nut, because it does not do all the work; it

is present in both wrenches, and its addition in the plaintiffs' wrench is the improvement.

The third claim is very like the first; but seems to be intended to claim the combination when a nut exactly like that described in the patent is used. This claim is not infringed.

Interlocutory decree for the complainants.