ECLIPSE MACH. CO. et al. v. HARLEY-DAVIDSON MOTOR CO. et al.

(District Court, E. D. Pennsylvania.    August 20, 1917.)

No. 1321.

1. COURTS ☞347—FEDERAL COURT—PLEADING—JOINDER OF CAUSES OF ACTION.

Under Equity Rule 26 (201 Fed. v, 118 C. C. A. v), it is no objection to a bill that it joins several causes of action if all are cognizable in equity and are between the same parties.

2. PATENTS ☞147—REISSUE—VALIDITY.

A claim allowed under the original application and for which a patent issued, if valid, loses nothing in validity because reincorporated in a reissue.

3. PATENTS ☞328—VALIDITY AND INFRINGEMENT—MOTORCYCLE CLUTCH.

The Ellett patents, No. 982,042 and No. 1,018,890, each for a motorcycle clutch, held valid as covering new and patentable combinations, but not infringed.

4. PATENTS ☞328—VALIDITY—PRIOR PUBLIC USE.

The Ellett patent, No. 1,071,992, for a motorcycle clutch, held void on the ground that the invention was perfected and the device in public use for more than two years prior to the date of application.

In Equity.    Suit by the Eclipse Machine Company and Frederick S. Ellett against the Harley-Davidson Motor Company and Alexander Klein.    On final hearing.    Decree for defendants.

Duane, Morris & Heckscher, of Philadelphia, Pa., Robert W. Byerly, of New York City, C. L. Sturtevant, of Washington, D. C., and Archibald Cox, of New York City, for plaintiffs.

J. Bonsall Taylor and E. Hayward Fairbanks, both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge.    The discussion of the merits of this cause has taken such a wide range and there have been brought into it so many and such various features that there is danger of the mind being swamped by the mass of details.    It is further, because of this, difficult to get a firm grasp of the features which present the points really in controversy.    The fact that there are three patents involved (one of which has been surrendered and reissued), and that the device as manufactured and used by neither the plaintiff nor the defendant embodies all the patented features of all the different patents, adds to the difficulties of an adequate presentation in small compass of the dispute.    The fact is that the device as used is not the device patented by any one of the patents, nor even described in the application except in so far as it is the device described in the third patent application, some features of which are patented.    These patented features do not lend themselves to conjoint use in any proper sense of the term.

[1] The complaint of the plaintiff is really three causes of complaint voiced in one bill, and is that the defendants have infringed upon rights granted to the plaintiffs, some by one patent and some by each of the other patents.    This is a wholly different thing from the complaint of one trespass upon the rights of plaintiffs granted by three patents capable of conjoint use and conjointly used.    We see, however,

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

no need for the averment in the bill of a conjoint use and no defense in the denial of it by the answer. Before the new equity rules went into effect such a bill as that filed in this case would have been bad for multifariousness. The long list of cases cited by counsel headed with National Manuf. Co. v. Meyers (C. C.) 7 Fed. 355, confirms this, but would not be needed because it is clear that devices made in accordance with these different patents would be wholly different constructions, and that the features of each do not lend themselves to conjoint use. Under rule 26 (201 Fed. v, 118 C. C. A. v), however, a plaintiff may now join (upon proper occasion) as many different causes of action as he may have. The only restrictions are that each cause must be one cognizable in equity; that the different rights of action all belong to the plaintiff, or, if more than one, to the plaintiffs jointly, and that if there are several defendants sufficient grounds for joining them must appear. All these features are present in this bill. Under rule 26, it is difficult to see how a bill can be objectionable merely because several causes of complaint are incorporated in one bill, and, even if it were, the objection could be made only in the way pointed out by rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi). This so far as concerns this court disposes of the question of multifariousness.

[2] There is another branch of the defense which is directed against the first or reissued patent. Reissues are provided for in R. S. 4916 (Comp. St. 1916, § 9461). The question raised is the propriety of the act of the Patent Office in granting the reissue, or more directly the validity of the rights thus in form granted. A view of the obvious purpose of this legislation and its limitations will aid us to see the proper scope of its effects. An inventor may describe his invention and claim such exclusive proprietary rights therein as he may have the right to claim. There is no requirement that he shall claim all which he might claim. If he claims less, two results follow. One is that he gets no more than what is claimed and allowed; the other is that there is a dedication to the public of all which is disclosed and not claimed. The omission of a possible claim may have been deliberate and intentional in fact or in legal intendment. If so, the act is irrevocable. It may have been, however, that the omission was due to "inadvertence, accident, or mistake." For such cases the act of Congress provides by permitting the patentee to surrender the granted patent and to receive a reissue. The proceeding is essentially an amendment, and within the rules applicable to amendments generally. It is a self-evident proposition that the patentee has no exclusive proprietary right beyond what is granted, nor until it is granted, and that the real basis of the validity of the original and of the amended grant is the original application, and this is not affected by the amendment beyond the formal fact of the reissue and the occasion for it. This part of the defense loses all practical value because the claim of proprietary rights made by the plaintiffs might have been based upon the original, if no reissued patent had been granted. A claim allowed under the original application and for which a patent issued, if valid, loses nothing in validity because reincorporated in a reissued patent. Ward v. Weber, 230 Fed. 142, 144 C. C. A. 440.

[3] This brings us to the consideration of plaintiffs' claimed invention. There are, as already stated, three patents issued and now belonging to plaintiffs. They are using a device which is not described in any of the applications, except the third, the claims of which are limited to a specific feature of construction in combination with other elements admittedly old. The defendants' device is likewise protected by a patent, the claims of which are in like manner restricted. There can be no plausible pretense made that the plaintiffs' patentee invented either clutch or motorcycle clutch. Convincing evidence of this is afforded by the first and every of the applications. The invention claimed in each instance is for "improvements in motorcycle clutches." There were motorcycle clutches, as well as clutches for other uses which antedated the entrance of plaintiff's invention upon the field. The defense, broadly stated, is that the plaintiffs did precisely what the defendants did in the exercise of precisely the same right. Each went to the ample store of the prior art, extracting therefrom the ideas which were adapted to his purpose, and through and by the application of mechanical knowledge and skill constructed a device which answered to his needs. There could be in this no room for any possible claim to invention beyond the hitting upon a combination in which some special construction might enter as a novel element. Such were in fact the claims which the Patent Office allowed to each applicant in issuing the patents under which the respective devices of the plaintiff and defendant are manufactured. There is no conflict between these patents, and in consequence no question of infringement involved. If such a defense is made good, the plaintiff has no case. If the plaintiffs' patents are valid, each invention claimed is an advancement upon the prior art. Let us see if this be true and in what the advance consists and wherein the defendants have appropriated the invention of the plaintiffs. The advance from a clutch to a motorcycle clutch is clear enough. The differences between them are real because functional. Features which are not only of merit, but necessary in the one, are or may be of no value and even positive defects in the other. A motorcycle clutch may, because of this, be a new thing when compared with the other clutches. An illustration of what is meant by this is afforded by the slippage feature. In clutches designed for many uses this feature is of no advantage, and in others is positively detrimental to efficient operation. In motorcycle clutches, it is so far from being objectionable as to be an indispensable characteristic. This slipping in the grip of the clutch is, in consequence, eliminated so far as possible in some clutches, but is encouraged in motorcycle clutches. This thought of the advantage of having, and because of this promoting slippage, makes a call for the exercise of a different quality of the mind from that demanded in the application of mere mechanical skill to the problems of construction involved. Moreover, slippage implies friction, and the necessity of guarding against the undue heating and wearing of the parts affected, so that the slippage must be under control and be regulated to meet the changing needs of varying conditions of travel. The designed device must further be kept within the limitations of space and weight and cost of construction which motorcycle

244 F.—30

use imposed and yet meet all the demands of strain and speed and durability made upon such machines. There is again in illustration the feature (claimed to be characteristic of plaintiffs' machine) of super-posed rotary numbers, resulting in mechanical gains in length of shaft and otherwise. There was room also for judgment in selection and in finding the proper combination of elements. The prior art, for in-stance, supplied both cone discs and the multiple disc type. Ellett chose the latter as better adapted to motorcycle use. There was also present the necessity of devising not merely a clutch which could be successfully operated, but one which could be so operated when in un-skilled hands. The extremes of clutch operation present the phases of engine and wheel shafts being so bound together as that they move as one and being so disconnected as that they rotate independently. The intermediate gradations of connection may be regulated through a pressure exerted by the operator on one or both rotary members or through the maximum pressure being supplied by springs or otherwise and being released by the operator. An after-event examination of the now known devices presents the further features of construction, in that the connection between engine shaft and wheel shaft may rotate with one or the other or be independent of each and thus wholly under the control of the operator. In the multiple disc type of clutch con-struction the pressure of disc on disc we know now may be regulated by a lever or by a screw and nut or screw cam by which latter the movement of disc on disc may be most delicately measured and con-trolled and the mechanism made most easily accessible for adjustment.

Neither of the parties to this litigation are in a position to deny the broad fact that the devices with which we are concerned called for in-vention, because we find each of them successfully asserted before the Patent Office inventive merit in their respective constructions. The question presented is the narrow one of whether the device of the plain-tiff was anticipated by prior patents or prior use or whether each of these devices is in possession of a limited field upon which the other does not encroach. The original of the first Ellett patent was No. 982,042, applied for May 27, 1910, and issued January 17, 1911; re-issue applied for October 28, 1911, and granted April 15, 1913, No. 13,554. The claims in issue are 1, 4, and 5. These are all combination claims. As in motorcycles the engine shaft is independent of the wheel shaft, engine power locomotion is imparted to the vehicle by the lock-ing of the two shafts. It is, however, at times necessary that one may be running when the other is not, or that each may be running at the same time in entirely independent rotation. This necessity calls for a third member by which the two may be coupled at the will of the driver of the vehicle. To afford the proper control, this third member must not revolve with either of the others when they are not revolving in unison. The driver must be able to engage or disengage the clutch at will and graduate the completeness of the interlocking of the two rotary members. This is accomplished by a screw and nut or screw cam. An instant complete interlocking of the two members when one was rotating at high speed would obviously be objectionable, as would a like instant complete disconnection. To overcome the difficulties

thus presented there is introduced a co-operating clutch device known by the descriptive name of a multiple disc clutch. Ignoring other features, these discs are really two sets of discs each set rotating with, because attached to, its own rotating member. The pressure applied by the driver through giving a turn to the screw brings these discs into the desired closeness of contact until at the maximum the friction becomes sufficient to make the wheel axle move along with the engine shaft. The only difference between these claims is that claim 1 describes the mechanism by which the result is accomplished as the super imposed mounting of the rotary members, the screw and nut mechanism, the multiple discs, and the means by which the movement and pressure of the discs are imparted through the screw and nut contrivance. Claims 4 and 5, on the other hand, describe the operating contrivance not by its mechanism but by its placement in the outer end of the hub.

The second Ellett patent applied for February 16, 1911, is No. 1,018,890, issued February 27, 1912. The claims in issue are 1, 8, 9, 11, and 12. These are likewise all combination claims. The designed clutch which the patentee had in mind was one substantially like the design shown in the Ellett first clutch, but embodied the idea of an advancement, in that instead of the interlocking pressure being applied by the operator up to the maximum, this maximum was normally applied by means of springs, and the pressure was graduated by the operator through a releasing act. The mechanical difference in construction is that the screw cam mechanism in the place of being used to directly exert pressure of disc on disc is used to press back the action of the spring so as to release the pressure which the spring would otherwise cause to exist between the discs. This second patent discloses two ways of accomplishing this improvement. The advancement thought is made clear by an understanding of either.

Next in chronological order of application and issue is the Harley patent under which the defendants manufacture and justify. The date of the application is October 9, 1911; the number of the patent 1,020,199, and the issue date March 12, 1912. The claims of this patent are very limited, and admittedly protect only special forms of construction.

The third Ellett patent was applied for April 15, 1912; bears the number 1,071,992, and was granted September 2, 1913. The only claim in issue is claim 1. This as all the others is a combination claim. The file wrapper discloses the fact that this claim was rejected on the patent to Harley. The objection was met by an affidavit carrying the date of the invention back to a date prior to October 9, 1911, the date of the Harley application. Incidentally there would seem to be an error in defendants' paper book which gives the Harley application the date of April 9, 1911. Without going into any discussion of the differences of construction between the respective devices of the plaintiff and defendant, or between that of the defendant and the design of the devices disclosed by the Ellett first and second patents, but, leaving this where it is left by the experts upon the one side and the other, supplemented by the arguments of counsel, we content our-

selves with a statement of the conclusion reached, which is that all which was left for the claim of an exclusive proprietary right in any inventor was one limited to his special features of construction or special combination of known elements or both. In view of the fact that the claims of the Ellett patents are limited to the combinations described, there can be no infringement unless the combinations involved have a substantial identity. McCormick v. Talcott, 61 U. S. (20 How.) 402, 15 L. Ed. 930.

Our further conclusion is that there is no substantial identity of combination use of what was described by the prior art in the device of the defendant and the devices disclosed by either the Ellett first or second patent. Each inventor did what he had the right to do. He went to what the prior art had in store, making his own selections therefrom and adding any improvements of his own devising which would cement the combination he had formed. This combination became his exclusive property as a combination unless its substantial like had been before found. The conclusion above stated results in a finding of no infringement of either of these patents. Neither this conclusion, nor the resultant finding, applies to the first claim of the third patent. There is in the device the design of which is disclosed in the Harley and the third Ellett patent a more than substantial likeness. These conclusions are consistent with and find some confirmation in the Patent Office experiences of the several applications. The claims of the Harley patent were allowed without the suggestion of an interference or other claim of conflict with the patents before granted to Ellett. Claim 1 of the third patent was rejected because of the existence of the Harley patent. The respects in which the conception of the device which was in the mind of Ellett as described in his application for his third patent was an advancement upon the prior art were that without sacrificing the superimposition of the rotary members, the clutch as an entirety was mounted upon a stationary shaft, and the arrangement of the springs afforded easy access for adjustment purposes.

[4] Before discussing the evidence by which the date of this invention is sought to be carried back of the Harley device a recapitulation of the salient features of the inventive situation may serve to clarify the view of the points of controversy. The prior art left room for invention in the improvement of the then known devices. It would seem that both the plaintiff and defendant are committed to this. They are likewise committed to the corollary proposition that any allowable claims to exclusive proprietary rights must be limited to the special improvement conceived and patented. The thought is easily grasped that the real invention might lie in the conception of some adjunct capable of conjoint use with the elements of any combination already known or subsequently hit upon. An invention which would be patentable might, on the other hand, consist of a novel combination of known elements or one in which some of the elements themselves were new. The designer of such an adjunct could not complain of the designer of another and different adjunct, nor could the patentee of the one combination exclude a second inventor from claim to a patent for

another and different combination. It is conceivable that the difference between a combination and one which had preceded it and been patented might be confined to a single element. If the effect of this one change was to change the character of the whole combination, the second would not be an infringement of the patent. If however, the effect of the change was to leave the patented combination substantially unchanged, infringement would be clear. It is further conceivable that a patented device might be improved by the addition of a novel adjunct adapted to be used in conjunction with the combination of elements which had been patented. Such use would be a real conjunctive use. If, however, the improvement could not be used with the elements of the prior device, but only as a substitute for some essential part of the old combination, so that the first combination was wholly destroyed, and a substantially new combination was formed, the patented device and the new one could not be said in any real sense to be capable of conjoint use. The two devices are different things and the inventions different inventions, because each is of a combination not substantially like, but different from, the other. A younger device might be an infringement of either, but could not infringe both combinations, or it might be a still different combination and not infringe either of the older ones. The latter is the conclusion reached under the facts of this case.

The point made that the allowance of the Harley claims upon an application pending at the same time as the Ellett reissue and second patent is an adjudication of the question, and a prima facie finding in favor of the defendants is more seeming than real, because the mere issue of the patent is consistent with the allowance of a very narrow claim. We do have, however, the prima facie finding that the claims of the Harley patent and claim 1 of the Ellett third patent are in conflict, nor is the plaintiff in a very strong position to deny the propriety of the allowance of this claim. On the face of the patent, situation the Harley invention is prior in time. In supporting his claim to priority of invention in fact Ellett, unfortunately for himself, has created an obstacle to a finding of the validity of his patent. His proofs disclose the invention to have been perfected and the device put into use, not only before the Harley filing date, but so long before his own application that the time given him within which to apply that he prima facie has lost his right to a patent. Abandonment to the public, or such dedication to be inferred from public commercial use, is inconsistent with the claim of an exclusive proprietary right, and is sufficient ground for the denial of the grant of a patent. When more than two years elapse after the invention is made, the inventor must assume the burden of excusing the delay and overcoming the presumption of dedication from commercial use. The duty of making clear the right is emphasized when the rights of others have intervened. One who with free access to the prior art, including what is in public use, invents an improvement and promptly follows this up with an application for a patent cannot, without clear proofs of a prior right in another, be deprived of the rights thus acquired, nor by a belated pat-

ent application. Without such proofs the issue of a patent after a grant to another comes too late. No finding of priority of invention can be here made without a finding that the date of the invention was at least over two and probably four years before letters patent were asked to be issued. This delay stands unexcused and unexplained to that degree of satisfactory clearness which the rules of law require. It may be that this finding works a real injustice to Ellett. There is room in this case for the suspicion which every inventor is prone to entertain that another has availed himself unfairly of information which the inventor supplied. This explains the entertainment of the suspicion whether well or ill founded. The rules of law, however, cannot with safety be made to yield to cases of individual hardships or to any of the considerations here advanced. A special exclusive, and because of this valuable, privilege is given to inventors. It is necessarily hedged about with conditions. One of these is that application for the grant of it must be made within a limited time. The failure to so apply leads others into expenditures and lawful ventures of the benefits of which it would be unjust to deprive them.

The bill of complaint is accordingly dismissed with costs.