MUTHER et al. v. UNITED SHOE MACHINERY CORPORATION.

(Circuit Court of Appeals, Third Circuit. September 15, 1926.)

No. 3438.

1. Patents ⬦➡90(5)—Date of invention of applicant held correctly found by Patent Office to be date of his application, as his first constructive reduction to practice.

A. was first to conceive an invention, but did not reduce it to practice. B. afterwards conceived the same invention, reduced it to practice, and applied for patent, believing himself to be the original inventor. But other applications were filed, claiming prior dates of invention, and B., learning of A.'s conception, purchased an assignment from him, and caused him to file application, canceling his own claims. *Held*, that there was no such relation between them that B.'s reduction to practice could inure to the benefit of A., and that the patent office correctly held that his date of invention must be restricted to the date of his application as his constructive reduction to practice.

2. Judgment ⬦➡719—Decree held not to create an estoppel in subsequent suit between same parties, because of facts found, on an issue not pleaded, tried, or decided in the prior suit.

A decree in an infringement suit, determining priority of invention between two patentees, *held* not to create an estoppel, because of facts found, which precluded the defeated party, in a subsequent suit between them, from claiming priority with respect to a different invention covered by its patent, but not covered by the patent of the other party involved in that suit, but made the subject-matter of another application pending at the same time, on which patent was refused; that issue not having been pleaded, tried, or decided in the prior suit.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Suit in equity by Lorenz Muther and Albert F. Deitsch against the United Shoe Machinery Corporation to obtain issuance of patent. Decree for defendant, and complainants appeal. Affirmed.

For opinion below, see 7 F.(2d) 954.

Edward F. McClennen and Francis J. V. Dakin, both of Boston, Mass., for appellants.

Edward G. Curtis, of New York City, and Frederick P. Fish and Alex. D. Salinger, both of Boston, Mass., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and DICKINSON, District Judge.

WOOLLEY, Circuit Judge. This is an appeal by the complainants from a decree of the District Court dismissing the bill in a suit brought under Section 4915 of the Revised Statutes (Comp. St. § 9460) by Albert F. Deitsch, the inventor, and Lorenz Muther, his assignee, to obtain a patent, refused by the Commissioner of Patents, on a restricted shoulder in an invisible eyelet setting device.

Deitsch's claimed invention relates to the art of eyeletting in the manufacture of shoes. A shoe upper of ordinary construction is made of a number of layers of material—an outer layer of leather, a buckram re-enforcing stay, a canvas lining, and a leather facing. Eyelets are of two kinds, visible from the outside of the shoe and invisible. Visible eyeletting is completed in one operation. The eyelet, inserted in an eyelet hole on the outside of a fully stitched shoe upper, extends inwardly through all the layers and is clenched upon the surface of the inner layer next to the stocking of the wearer. Invisible eyeletting, prior to the invention in suit, comprised two operations on the shoe upper before its layers were completely sewed togeth-

er; one, inserting the eyelet in the punched hole beneath the inner layer, passing it outwardly through the next layer and clenching it between the outside of the third layer and the inside of the outer layer; and the other, returning the outer layer to its position overlying the under layers, thus concealing the eyelet and giving the appearance of a mere perforation in the leather. Through eyelets of both kinds shoes are laced.

The instrument used for eyeletting in both ways was a small die or punch with a curved shoulder which in action expanded and compressed the flanges of the eyelet barrel. Deitsch conceived the idea that if the shoulder of this tool were cut off at a precisely determined point in its curvature, the lower extremity of the tool would enter the eyelet and the shoulder, thus restricted, descending through the outer layer of the upper would contact with the eyelet between it and the next layer and there spread and compress its flanges out of sight, performing the two operations in one on a fully stitched upper. The idea, if novel and practical, was highly useful.

In August, 1912, Deitsch, then a machinist in the employ of the Brown Shoe Company at its Blue Ribbon Plant in St. Louis, took a visible eyelet punch and cutting down the shoulder tried it in invisible eyeletting on uppers made of various kinds of leather with success that was indifferent yet sufficient to call it to the attention of Edmund Muther, in charge of the local office of the Peerless Machinery Company. Later, Edmund Muther sent the punch and a sketch (now lost) to his brother, L. F. Muther, in Boston, writing him that Deitsch had done the best he could with the facilities at hand and requesting him to make up several of them. L. F. Muther, it is testified, showed the tool to Lorenz Muther, his father, head of the Peerless Machinery Company, who was little impressed with it. He then wrote his brother Edmund for more information. Here it seems the matter rested until Lorenz Muther himself, in January, 1914, invented a punch for invisible eyeletting which embodied Deitsch's idea of a restricted shoulder as one of its two characteristics—the other, essentially his own, being a recess above the shoulder. In his application for a patent, Muther, Sr., broadly claimed the Deitsch invention, yet he abandoned the claims covering it when, later (as testified), he was informed for the first time of the Deitsch device. Being concerned about what Deitsch had done, and doubtless desiring the advantage of his earlier date of conception, he bought his invention. In the meantime

other inventors had entered the field and applied for patents for the same or related device with claimed dates of invention not far apart. These were Doulett, Cote and Smith. As a result, the Patent Office directed interference proceedings between the several applicants on their respective inventions. This induced Muther, rather hurriedly, to have Deitsch apply for a patent on his assigned invention. Deitsch filed his application on August 10, 1914. The patent tribunals, beginning with the Examiner of Interferences and ending with the Court of Appeals of the District of Columbia, all found that Deitsch was first to conceive the invention and fixed his date of conception sometime in August, 1912. They also found that between the date of his conception and the date of his application for a patent Deitsch did substantially nothing toward its reduction to practice, and held that his failure to develop his invention by further experiments and ultimately by actual reduction to practice amounted to that lack of diligence which precludes an award of a patent based on the date of conception. Christie v. Seybold, 55 F. 69, 76, 5 C. C. A. 33. Thus he was restricted to the date of his application as the date of constructive reduction to practice. In the interference proceedings, where there were several issues between the several interferents, Doulett defeated Deitsch and the Commissioner of Patents on the decree of the Court of Appeals of the District of Columbia refused him a patent. Hence this action.

For a statement of the facts and proceedings in greater detail we refer to the opinion of the trial court. (D. C.) 7 F.(2d) 954.

[1] As confusion, arising in the somewhat complicated interference proceedings, has extended into and through the trial and review of this case, it may be well to state the true question involved. This may be done and the controversy clarified by first determining what question is not involved. There is no question here as to which one of several claimants was the first and original inventor of the restricted shoulder on an invisible eyeletting tool. The question is whether Deitsch was the first and original inventor, because it is only on a finding that he was such an inventor that, in this proceeding, he would be entitled to the patent refused him by the Commissioner. Except as their positions bear on that of Deitsch we are not concerned with Muther, Cote, Smith and Doulett.

The question of inventorship in Deitsch turns on several others; first, the time and, second, the character of his concept, and, third, its reduction to practice with reason-

able diligence before others came into the art with the same thought and diligently reduced it to practice.

We shall assume—indeed, we find—that the patent tribunals were right in holding that Deitsch had the first concept of the invention and that it occurred some time in August, 1912. Our next inquiry therefore is when did he reduce it to practice? His constructive reduction to practice was on the date he filed his application for a patent—August 10, 1914. Did he actually reduce his conception to practice between those dates? This question is divided into two others: First, whether he made such reduction himself; or, second, whether he made it through Muther, Sr., acting as his agent.

First: Without repeating the testimony it will be enough to say that, in obedience to the law of Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657, yet more particularly as a result of our independent judgment, we subscribe to the finding of the patent tribunals that Deitsch did not himself reduce his inventive concept to practice. True, he made several experiments in August, 1912, which showed the possibility of a practical tool, yet they either failed to impress him with the value of his thought or discouraged further trials. At all events after turning the result of his work over to Edmund Muther, he did nothing for nearly two years, when, the matter being called to his attention by Muther, Sr., he sold him his rights in the invention for a small sum.

Second: Muther, Sr., reduced the invention to actual practice in January, 1914. Whether he conceived it independently of Deitsch, or unconsciously dependent on Deitsch, being a mental operation of his own, it is difficult for any one but himself to determine. There is evidence that the Deitsch device was called to his attention a year and a half before, yet Muther testified that he had no recollection of it and in his application for a patent, filed January 31, 1914, he made the usual affidavit that he believed himself to be the original, first and sole inventor. We think Muther, Sr., was entirely honest in what he said and did. Certainly he is the only one who knows how he acquired his conception of the invention. Rather than surmise that it was born of an unconscious impression of the Deitsch device previously shown him, we shall take his word and, accepting as true his story of his conception in November, 1913, we find that he conceived the invention independently of Deitsch. Rousso v. Barber (C. C. A.) 3 F.(2d) 740, 741; Miehle Printing Press & Mfg. Co. v. Miller

Saw Trimmer Co. (C. C. A.) 6 F.(2d) 417, 418.

The evidence which has brought us to this view brings us to the conclusion that Muther's reduction to practice was equally independent of Deitsch. We find no relation of principal and agent, beneficiary or trustee between Deitsch and Muther in respect to the invention by which Muther's reduction to practice inured to Deitsch. Here again we are in accord with the findings of the patent tribunals.

[2] As between Deitsch and Muther, the situation is that Deitsch first conceived the invention and Muther first reduced it to practice. Deitsch's conception, however inventive, is not the subject of a patent except through means by which to carry it out. He supplied none. Reduction of his inventive conception to practice is therefore the price of a patent. This he has not paid unless by the constructive reduction incident to the filing of his patent application on August 10, 1914. But this will avail him nothing because before that date a number of inventors had both conceived and reduced to practice the same idea—three, Muther, Cote and Doulett, had applied for patents. Also, the invention had gone into commercial use. The grant of a patent to Muther, assignee of Deitsch, therefore, must be refused, unless, as he maintains, the respondent is estopped to deny his right to a patent by the decision of the District Court of the United States for the District of Massachusetts, affirmed by the Circuit Court of Appeals for the First Circuit, in United Shoe Machinery Corporation et al. v. Muther, 288 F. 283.

Muther brought that suit against the United Shoe Machinery Corporation for infringement of his patent No. 1,112,643, granted October 6, 1914, on the application to which we have referred, filed January 31, 1914. The United Shoe Machinery Corporation was operating under a patent to Doulett, granted after the interference proceedings on an application filed August 1, 1914. As Muther had abandoned all claims covering the Deitsch device, the action naturally and necessarily related to the remaining claims for the recess or "a contracted portion [of the tool] above the setting shoulder." That the issue was limited to this feature was repeatedly stated by the court. Therefore the case had nothing to do with priority of invention of the restricted shoulder as between Deitsch and Doulett. Because of lack of identity of causes of action, the complainants concede that the decision of the federal courts in Massachusetts cannot operate as res judicata in

this case, but they insistently urge that decision as an estoppel by judgment, grounded on the distinction between res judicata, which is confined to the thing adjudged, and estoppel by judgment, which extends beyond the thing adjudged to the decision on issues actually tried and decided. Friend v. Talcott, 228 U. S. 27, 38, 33 S. Ct. 505, 57 L. Ed. 718, and Myers v. International Trust Co., 263 U. S. 64, 44 S. Ct. 86, 68 L. Ed. 165. The effect of the decision was a reversal of the patent tribunals on evidence not before them and particularly on a letter written by Doulett showing test and use of his invention not in 1913 as found by the patent tribunals but "since March 1, 1914." Finding Muther prior to Doulett on the recess above the shoulder, the court sustained the Muther patent. As Doulett's experiments in respect to both the upper and lower inventions on the little tool were (it is claimed) but a month or so apart, the complainants insist that the court in deciding the issue of priority between Muther and Doulett on the upper invention necessarily decided an issue of priority between Deitsch and Doulett on the lower invention and in effect reversed the patent tribunals also on that issue and thereby estopped the respondent from re-trying it here. While this argument may be persuasive—it was, indeed, admirably presented—we are constrained to hold that it does not apply, and for two reasons: One, that an issue of priority between Deitsch and Doulett as to the restricted shoulder was not there pleaded, tried or decided; and, if by any chance we are wrong in this, the other, that the decision is without effect on the instant case because Doulett's very latest date of actual reduction to practice was in April or May, 1914, which was before Deitsch's earliest date, that of his constructive reduction to practice, when on August 10, 1914, he applied for a patent. Moreover, the complainants' contention of estoppel by judgment, if sustained on the facts and on the law, would be of value only if we should hold that Muther's reduction to practice, prior to Doulett's, inured to Deitsch. Having held the contrary, the point falls.

These views are decisive of the suit and sustain the decree below.