**CLEVELAND TRUST CO. et al. v. THOMAS et al.**

No. 3532.

District Court, D. Massachusetts.

Nov. 21, 1932.

Charles D. Woodberry and Roberts, Cushman & Woodberry, all of Boston, Mass., for plaintiff.

Irving U. Townsend, Jr., Emery, Booth, Varney & Townsend, Harry F. R. Dolan, and Dolan, Morson & Stebbins, all of Boston, Mass., for defendant.

BREWSTER, District Judge.

This proceeding in equity is brought under R. S. § 4915 (35 USCA § 63) to compel the commissioner of patents to issue letters patent upon the application of one Frank G. Crane, plaintiffs' assignor, who had applied for a patent covering new and useful improvements in a sanitary napkin or the like.

### Statement of Facts.

1. On February 14, 1927, Crane filed an application covering several different inventions, and on May 21, 1927, he filed a divisional application which included eight claims.

2. On June 21, 1927, interference was declared by the Patent Office between claims 6, 7, and 8 of the Crane application and claims 1, 3, and 6 of Reissue Patent No. 16,-603, issued to the defendant Thomas, assignor of the defendant Thomas Products, Inc.

3. Thomas filed his original application March 13, 1925, upon which Letters Patent

No. 1,564,489 was granted December 8, 1925. On February 17, 1927, he applied for a reissue, which was granted on April 19, 1927. In his affidavit accompanying his petition for a reissue, Thomas asserts that the original patent is inoperative and invalid for the reason that the specifications thereof were defective and insufficient and that such defect was the inadvertent failure to incorporate therein claims clearly commensurate with the invention as disclosed in the specifications. The drawings, description, specifications, and the five claims of the original patent were incorporated without any change whatsoever in the reissue patent. The only difference between the two patents, the original and the reissue, was the addition of claims 6, 7, and 8 which, in effect, enlarged the protection of the patent with respect to one of the elements, to be referred to hereafter.

4. In the interference proceedings, there were three counts based on claims 1, 3, and 6 of the Thomas patent which were identical in terms with claims 6, 7, and 8 of Crane's application. It is sufficient for the purposes of illustration to give only the first count.

Count 1. (Claim 1 of the Thomas Reissue No. 16,603): "In a sanitary napkin, a multiplicity of superposed, thin webs of wood cellulose forming a pad portion which is readily disintegrable after use, and an additional soft, flexible thin sheet of substantially similar material suitably moisture-proofed and laid upon said pad portion without positive attachment thereto, affording no obstruction to the disintegration of the said pad portion, and being itself capable of disposal in the same manner as the said pad portion, whereby a moisture-proofed flexible and non-irritating pad readily disintegrable almost in its entirety, and all capable of similar disposal after use, is provided."

5. It will be noted that the invention contains three elements: (1) A pad portion; (2) an outer layer of moisture-proofed material constituting moisture-retaining means; (3) an envelope of gauze containing the pad portion and the moisture-retaining means.

The controversy in this case centers about the second element which is claimed in the three counts in the following language: In the first claim the moisture-proofing means is described as "an additional soft, flexible thin sheet of substantially similar material suitably moisture-proofed and laid upon said pad portion without positive attachment thereto. * * *"

In the third claim (count 2) it is described as a "thin layer of material similar in character to that of said pad portion suitably moisture proofed and constituting moisture-retaining means at the outer face of the said pad portion intermediate the latter and said gauze envelope. * * *"

In the sixth claim (count 3) this element is described as "a soft, highly flexible, thin, moisture-proof sheet constituting moisture-retaining means at the outer face of said pad portion intermediate the latter and said gauze envelope, said moisture-retaining means having substantially the same degree of flexibility and softness as that of said pad portion. * * *"

6. In disclosing how he constructed the moisture-proofed portion, Thomas illustrated the method which he then considered preferable. I quote from his application (No. 1,564,498):

"I obtain said results preferably by subjecting a sheet of wood cellulose or other cellulosic material similar to the film-like sheets 2 but of a closer texture, less tenuous and heavier to a bath of a special moisture proofing material. In practice said material may be a rubber or rubber-like compound or a high-melting paraffin or wax, said material being of high flexibility when dry, not stiff or harsh, and having a melting point well above body temperatures so as not to be rendered viscous or sticky thereby. * * *

"In forming the absorbent pad embodying my invention and in accordance with the method thereof a multiplicity of film-like strips or webs of the wood cellulose are superposed or piled in any suitable manner, as by feeding from a roll. The moisture proofing surface is then applied. Since any moisture proofing material must not penetrate the pad to any substantial degree it is undesirable to apply said material either in a spray or other form directly to the superposed webs, the absorptive properties of the latter being so marked that any material suitable for the purpose and so applied will impregnate the webs or penetrate them so far as to make them stiff and not readily separable. Accordingly I preferably provide a sheet or web of wood cellulose or other cellulosic material of appreciably greater substance than said multiplicity of webs and conduct the same through a bath of the moisture proofing material such as above mentioned, drain it of any excess material, and then lay it desirably while still moist, upon the superposed webs."

7. In practice it was found that, when the moisture-resisting element was obtained by

dipping the sheet into a rubber-like compound or certain moisture-proofing liquid, which was being used in the manufacture of the completed article, the results were not commercially successful, owing to the fact that, after the article had stood for a long time and the moisture-proofed sheet had become dry, it was then not sufficiently flexible or soft to meet the objects sought to be obtained by the invention. Consequently it was found that, by applying a thin sheet of gutta-percha to a sheet of material substantially similar to that used in the absorbent pad, a moisture-proofed sheet would result which was free from the objections found in sheets moisture-proofed by the earlier method. This application was accomplished by heating and pressing upon a sheet of wood cellulose, or other similar material, a thin sheet of gutta-percha.

8. According to the file wrapper in the matter of Thomas' original application, it appears that, during the course of the proceedings in the Patent Office, two claims were added by amendment which were broad enough to cover as a moisture-proofing means a layer of inherently moisture-proof material. These claims were canceled, and claims 1, 2, and 3, as originally submitted, were rewritten as they appeared in the patents as finally granted. At the time this was done it was stated that it was done merely to reduce the number of claims "but without in any sense limiting the scope of the protection asked for."

I take it that it was because the rewritten claims 1, 2, and 3 did not go as far as the canceled claim that Thomas applied for a reissue patent which, as finally granted, added the sixth claim involved in the interference proceedings as count 3.

9. In the interference proceedings, Crane introduced no evidence tending to establish priority of discovery. The evidence before the patent tribunal and also before me was offered solely upon the question of the sufficiency of the disclosure in the Thomas patent and the commercial success of articles manufactured according to the teaching of the patent. From an examination of the records in the interference proceedings, it is quite apparent that the plaintiffs advanced before the several patent officials the same reasons for granting a patent upon Crane's application that they have urged upon me. The Law Examiner, the Interference Examiner, the Commissioner, and the Board of Appeals, all concurred in the conclusions that Thomas, the patentee, was the first inventor; that claims 1, 3, and 6 of his reissue patent were valid; that Thomas did not, by the cancellation of any claims in his original application, forfeit the right to obtain protection as to the claims involved in the interference proceedings, and that claim 6 was within the scope of the invention fairly disclosed in the original Thomas application and patent.

### Conclusions of Law.

R. S. § 4915 (35 USCA § 63) provides that, whenever a patent on application is refused, this court may adjudge that the applicant is entitled, according to law, to receive a patent for his invention. The only question, therefore, in this proceeding in equity is whether, on the facts of the case, the plaintiffs have shown that Crane was entitled to a patent on his application as the first and original inventor. Christie v. Seybold (C. C. A.) 55 F. 69; Muther v. United Shoe Machinery Corp. (C. C. A.) 14 F.(2d) 808. This question, coming as it does after interference proceedings between an applicant and a patentee which terminated in favor of the outstanding patent, imposes an unusually heavy burden upon the plaintiffs to establish that the commissioner was clearly wrong in awarding priority of invention to Thomas. The plaintiffs make no attempt to carry Crane's conception back of his original filing date (February 14, 1927) which was nearly two years after Thomas' first application was filed. There can be no escape from the conclusion that Thomas was the first to conceive and reduce to practice his invention. This fact, according to the defendants' contention, defeats the plaintiffs' right to relief under the statute, and all questions relating to the validity of the three claims involved are not germane to this controversy. I am inclined to agree in this view. Compare Alexander Milburn Co. v. Davis-Bournonville Co., 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651.

Nevertheless, I proceed to a consideration of the several grounds upon which the plaintiffs challenge the validity of claims 1, 3, and 6 of Thomas' Reissue Patent, since they apparently proceed on the assumption that, if they can successfully attack the validity of these claims, they thereby establish their right to letters patent upon Crane's application. Their grounds for assailing the validity of the claims are as follows: (1) Inadequacy of disclosure in both patents; (2) that the claims are invalid (a) because they were not for the same invention intended to be secured by the original application;

920

(b) because there was not such inadvertence, accident or mistake as was required by R. S. § 4916 (35 USCA § 64), pursuant to which the reissue patent was granted; (c) because Thomas had intentionally abandoned the subject-matter of the claim as construed by the plaintiff; (d) because Thomas had not exercised diligence in applying for the reissue.

First, as to the adequacy of the disclosure, the same point was made before the Law Examiner, who disposed of it in the following statement, with which I concur: In Crane's application the disclosure in his specification does not "call for the use of any specific moisture proofing materials or methods and since moisture proofing is a highly developed art the requirement for the use of waterproofing materials does not necessitate definite instruction to the public as to what specific materials may be suitable for the purpose of the counts. The specification is addressed to persons skilled in the art and it is to be presumed that they would have sufficient skill to select the necessary materials where the conditions to be met are stated. The patentee Thomas does not limit himself to the use of any special moisture proofing material, either in his specification or the counts. He says that in practice the material may be a rubber or rubber-like compound or a high melting paraffin or wax. Rubber, paraffin and wax are all well known waterproofing materials."

In my statement of facts I have shown to what extent the patentee disclosed a practical method of obtaining the moisture-retaining means, and this in such simple terms that even one unskilled in the art could have constructed the article which he had invented.

I do not think it necessarily follows that, because a better method of rendering this element moisture-proof was later employed, the anticipatory effect of the patent is defeated. If the new method is fairly within the disclosures of the specification, it is of no material significance that articles made according to the illustrated method were not commercially as satisfactory as articles made according to the improved method.

Secondly, with respect to the validity of claims 1, 3, and 6 of Thomas' Reissue Patent, I am unable to agree with the plaintiffs that claims 1 and 3 were for a different invention, or that they embraced new matter, or were to be given any broader scope than they were entitled to in the original patent. The language of the claims is precisely the same in both the original and the reissue. They are supported by specifications and drawings that are in every particular identical. Under these circumstances, I am unable to understand how it would be possible to ascribe a different meaning to these later claims than to the earlier claims which were couched in exactly the same language. It is perhaps true that before the patent office officials Thomas contended for a broad construction of the claims, but, if he was entitled to this broader construction in the reissue, he was equally entitled to it in the original. I grant that the same language in different patents may, in some cases, have different significance, but, as appeared in Sirocco Engineering Co. v. B. F. Sturtevant Co. (C. C.) 171 F. 440, a case cited by the plaintiffs, the identical words must be "read in connection with materially different specifications." This is not true with respect to the Thomas patents.

I hold, therefore, that, so far as we are concerned with claims 1 and 3 (counts 1 and 2), the reissue patent was for identically the same invention as that claimed in the original patent. Inasmuch as these claims read upon Crane's invention, it is not necessary to decide whether claim 6 falls without or within the scope of Thomas' original disclosure. It is settled law that the invalidity of a new claim in a reissue does not impair the validity of original claims repeated in the reissue patent. Collins Co. v. Coes (C. C.) 3 F. 225; Cote v. Moffitt (C. C.) 15 F. 345; Worden v. Searls (C. C.) 21 F. 406; American Diamond Rock-Boring Co. v. Sheldon (C. C.) 25 F. 768; Jenkins v. Stetson (C. C.) 32 F. 398; Gage v. Herring, 107 U. S. 640, 646, 2 S. Ct. 819, 27 L. Ed. 601; Dryfoos v. Wiese, 124 U. S. 32, 8 S. Ct. 354, 31 L. Ed. 362; Rawson & Morrison Mfg. Co. v. C. W. Hunt Co. (C. C. A.) 147 F. 239; Leggett v. Standard Oil Co., 149 U. S. 287, 13 S. Ct. 902, 37 L. Ed. 737; Eclipse Mach. Co. v. Harley-Davidson Motor Co. (D. C.) 244 F. 463.

The same is true if the new claim was omitted advertently, or if abandonment of the subject-matter of that claim was shown. Jenkins v. Stetson, supra; Hatmaker v. Dry Milk Co. (D. C.) 29 F.(2d) 918. Moreover, it has been held that there is no estoppel arising from a failure to claim the broader monopoly until after some competitor has put out a device not reached by the earlier claim. Reo Motor Car Co. v. Gear Grinding Mach. Co. (C. C. A.) 42 F.(2d) 965.

On the question of due diligence, there

is no evidence before me which could support a finding that Thomas did not proceed with due diligence as soon as he discovered that his claims were not commensurate with his disclosure, and certainly his application for reissue was prosecuted with reasonable promptness.

It follows from the foregoing that the plaintiffs have not sustained their burden of establishing their right to a patent upon the Crane application.

A decree dismissing the bill may be entered.