# LEGGETT *v.* STANDARD OIL COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 225. Argued April 20, 21, 1893. — Decided May 10, 1893.

The second claim in reissued letters patent No. 5785, granted March 10, 1874, to Edward W. Leggett for an improvement in lining oil barrels with glue, viz.: " for a barrel, cask, etc., coated or sized by the material and by the mode or process whereby it is absorbed into and strengthened the wood fibre, substantially as herein described " is void as it is an expansion of the claim in the original patent so as to embrace a claim not specified therein.

The first claim therein, viz.: "the within described process of coating or lining the inside of barrels, casks, etc., with glue, wherein the glutinous material, instead of being produced by reduction from a previously solid state, is permitted to attain only a certain liquid consistency and is then applied to the package and permitted to harden thereon for the first time, substantially as herein set forth and described," is void: (1) because it was a mere commercial suggestion, and not such a discovery as involved the exercise of the inventive faculties; and, (2), by reason of such prior use as to prevent the issue of any valid patent covering it.

The invalidity of a new claim in a reissued patent does not affect the validity of a claim in the original patent, repeated in the reissue.

The poverty or pecuniary embarrassment of a patentee is not sufficient excuse for postponing the assertion of his rights, or preventing the application of the doctrine of laches.

THE case is stated in the opinion.

*Mr. Edmund Wetmore*, (with whom was *Mr. Samuel C. Reed* on the brief,) for appellant.

*Mr. Charles C. Beaman*, (with whom was *Mr. Joseph H. Choate* on the brief,) for appellee.

MR. JUSTICE JACKSON delivered the opinion of the court.

This is a suit in equity brought April 8, 1887, in the Circuit Court of the United States for the Southern District of New York by Edward W. Leggett, a citizen of New York, against the Standard Oil Company, an Ohio corporation, for the alleged infringement of reissued letters patent No. 5785, granted to the complainant March 10, 1874, for an "improvement in lining oil barrels with glue."

The original patent No. 143,770 was issued October 21, 1873. The specification and claim of this original patent are as follows:

"Be it known that I, Edward Wright Leggett, of the city, county, and State of New York, have invented an improved process of coating or lining the inside of barrels, casks, etc., for the purpose of rendering the same impervious to water, oil, or any contained substance, of which the following is a specification:

" This invention relates to that class of processes employed for the coating or lining of the insides of barrels for the above-mentioned purpose, and consists in preparing from any suitable glutinous substance glue, said glue being permitted to attain but a certain consistency and then applied directly as a coating or lining.

" In carrying out my invention I proceed as follows: Take any of the materials from which glue may be made and proceed in the usual or any suitable manner for the manufacture of glue until the soup has attained a certain consistency.

" This consistency must be considerably less than that which is required wherein semi-fluid, solid, or cake glue is to be produced, and while it is in this half-finished state, so to speak, it is applied directly to the inside of the barrel, or cask, where, after due evaporation, it will be found that said cask or barrel is lined thoroughly and completely with glue, inasmuch as a pressure of steam generated by the heat applied is sufficient to force the thin glutinous fluid well into the pores and recesses of the wood, thus insuring a perfect lining.

" I am aware that barrels, etc., have been lined or coated with glue when said glue has been subjected to a process of reduction by dilution from its original consistency to a sufficiently liquid state, but I am not aware of any process wherein the glutinous material has been permitted to attain only its proper consistency and then applied directly, thus saving the time, labor, and expense heretofore employed by continuing the manufacture of the glutinous soup until it has attained a semi-fluid or gelatinous consistency, thus necessitating a reduction by dilution and reheating before it is fit for application, as set forth in this specification, travelling over, as it were, the same ground, backward and forward, two or three times, whereas by my process this trouble is entirely dispensed with by operating as within described.

" This invention has nothing to do with the glue-lined barrel as an article of manufacture, but relates particularly to a new and inexpensive process of constructing a glue-lined barrel, cask, etc.

" Heretofore the glue has been taken in its complete state

as an article of manufacture, has been reheated, diluted, and then applied, but such a process necessarily carries with it all the expense of preparing the glue at first as an article of trade or commerce.

" My process contemplates taking the glue when at a proper consistency and applying it to the inside of the package, permitting it to harden for the first time upon that surface.

" I claim as my invention :

" The within-described process of coating or lining the inside of barrels, casks, etc., with glue, wherein the glutinous material, instead of being produced by reduction from a previously solid state, is permitted to attain only a certain liquid consistency and is then applied to the package and permitted to harden thereon for the first time, substantially as herein set forth and described."

An application for the reissue of this patent was filed February 2, 1874, and contained substantially the same specification. It repeated the claim of the original patent, and in addition thereto made a second claim for " a barrel, cask, etc., coated or sized by the material and by the mode or process substantially as herein described."   On February 6, 1874, the examiner rejected the second claim thus made for the reason " that a barrel coated by the process described has no features or characters to distinguish it from a barrel coated with glue as prepared in the ordinary way."   Thereafter the patentee amended the specification on which the reissue was applied for by inserting the following :

" The distinguishing feature of this improvement may be found on examination to be the superior integrity of the lining by the use of soup glue ; by its peculiar character it is more freely absorbed by the wood penetrating into fibre deeper than by the ordinary mode.   Hence the sizing or coating is not only upon the surface, but penetrates into the wood, thereby presenting a thicker covering to the action of the oil, and this sizing is not liable to be broken off or cracked in handling the cask, as part of the coating is absorbed into the fibre and cells of the wood, which gives additional strength to it."

The reissue was thereupon allowed March 10, 1874, with a second claim for "a barrel, cask, etc., coated or sized by the material and by the mode or process, whereby it is absorbed into and strengthened by the wood fibre substantially as herein described."

In both the original and reissued patents the specifications disclaim any idea or invention in a glue-lined barrel as such. The first claim of the reissue, like the first claim of the original, is limited to a process, and the specification of the original declares that the invention "relates particularly to a new and inexpensive process of constructing a glue-lined barrel, cask," etc. The reissued specification broadens this description by adding at this point the following words: "better adapted to the purpose designed by coating and sizing, as set forth, than by the ordinary means," and by the additional paragraph in the specification of the reissue, above recited.

Among the defences set up in the answer were (1) non-infringement; (2) want of patentable novelty in the invention; (3) anticipation thereof by various other specified American patents; and (4) prior use of the patented process by a large number of persons in New York, Pennsylvania, Ohio, and Massachusetts, whose names are given.

After replication filed and after some of the proofs had been taken by the respondent on the question of prior use of the patented invention by other persons, the complainant, by leave of court, filed an amended bill setting up, in addition to the averments of the original bill, the claim that, prior to the issue of his original patent, he had disclosed his secret or process to the defendant company on its promise that no use would be made of the process, or any part of it, without his consent; but that the defendant, disregarding this promise, did use said process without his permission, and thereby violated its said agreement with him, by reason whereof the defendant in equity should be estopped from denying or in any way questioning the validity of the complainant's invention and the letters patent issued therefor.

The defendant filed a supplemental answer denying the new averments of the amended bill, and interposed the defences of

the statute of limitations and of laches, so far as the amended bill sought or attempted to hold it liable in any way on the alleged promise not to use complainant's secret or process. Replication having been filed and voluminous proofs taken on the questions presented by the pleadings, the court on the hearing upon the merits entered a decree dismissing the complainant's bill with costs. From that decree the present appeal is prosecuted. The opinion of the court below is reported in 38 Fed. Rep. 842, and the ground upon which the decision proceeded was that there was a lack of patentable invention in the thing patented.

We are of opinion that there is no error in the judgment of the court below for various reasons. In the first place, the second claim of the reissue, secured, as it was, by important changes in the specification of the original patent, was a manifest enlargement or broadening of the patent. It is not pretended that there was any mistake, accident, or inadvertence in either the specification or the claim of the original patent such as would render it void or inoperative, and warrant the granting of a reissue thereof with an additional and enlarged claim. After the complainant had secured his patent for the process, which was all he could claim under the original specification, he ascertained that he was still not protected against the use by the defendant of barrels, casks, etc., coated or lined by the process covered by his patent; and it was then that he conceived the idea of a reissue which should be broad enough to include not only the claim set forth in the original, but also a claim for a barrel, cask, etc., coated or sized with glue, by the process described. This was in effect an expansion of the claims in order to embrace an invention not specified in the original patent, and, therefore, rendered the second claim of the reissue invalid, under the well-settled rule of this court, as announced in *Miller* v. *Brass Company*, 104 U. S. 350; *Mahn* v. *Harwood*, 112 U. S. 354; *Wollensak* v. *Reiher*, 115 U. S. 96, and other cases. It is shown by the complainant's own testimony that he procured the reissue for the purpose of having it cover barrels so as to make the defendant an infringer. Furthermore, to give the second claim of the

reissue any validity in its application to the barrel cannot be permitted, in view of the rejection of the second claim first presented in the application for reissue, and which necessitated the modification of the specification as above stated, and which declared that the "distinguishing feature of his improvement *may be found on examination* to be the superior integrity of the lining by the use of soup glue," etc. The second claim being allowed upon this amendment of the specification, if it had any validity at all, cannot properly cover the coated barrel, cask, etc., as a product, but would have to be limited in its operation to the "glue soup," or material used in coating or sizing barrels, and the alleged superiority thereof in being absorbed into and strengthened by the wood fibre in some way distinguishable from and superior to the coating with glue in the ordinary way. But there is, however, no testimony in the record that barrels coated or sized by the complainant's process are, in fact, distinguishable from barrels lined in the ordinary way, or that barrels so "glued" are any better than those coated by the old process. The testimony shows that barrels lined under either the old or the new process are practically indistinguishable.

This second claim of the reissue, being a manifest attempt to broaden the original patent, cannot, in view of the amended specification on which it was based or procured, be held to cover a glue-lined barrel as an article of manufacture, which was distinctly disclaimed by the original specification.

But the invalidity of this new claim in the reissue does not impair the validity of the original claim, which is repeated and made the first claim of the reissued patent. *Gage* v. *Herring*, 107 U. S. 640, 646. The complainant's rights, therefore, must be determined upon the validity of the claim of the original patent, and upon the estoppel set up against the defendant, growing out of its alleged promise not to use his process or secret without his consent. This latter claim cannot possibly be sustained, for the reason that the promise, if made, in no way misled or deceived the patentee to his injury or damage. According to his own testimony he had not

applied, and had not thought of applying, for a patent on his process at the time of disclosing his secret, but shortly thereafter he concluded that he had acted unwisely in imparting it to the defendant, and at once applied for and obtained his original patent for the very purpose of protecting himself against the defendant's use thereof. He did not, therefore, rely upon that alleged promise, but took proceedings by obtaining a patent to directly guard against its violation. He did not disclose his process to the defendant as an invention, or as one which he proposed to patent. Under such circumstances no estoppel arises against the defendant from questioning the validity of the patent, which was not then in existence, and which the defendant did not know was to be claimed as an invention.

So far as the alleged promise embodies any element of a contract or of an undertaking to compensate the complainant for the use of his so-called secret, the statute of limitations and laches interposed by the defendant was clearly a bar to any recovery on that ground, because the alleged promise, if the proof was sufficient to establish it, was made in September, 1873, and the amended bill seeking relief thereon was not filed until January 13, 1888 — some fourteen or fifteen years later. This lapse of time not only constitutes a bar, such as the statute of limitations interposes, but shows such laches as will clearly preclude any right to relief. *McLean* v. *Fleming*, 96 U. S. 245; *Speidel* v. *Henrici*, 120 U. S. 377; *Galliher* v. *Cadwell*, 145 U. S. 368, 372.

No sufficient reason is given for this delay in suing. It is sought to be excused on the ground of the plaintiff's poverty during this period; but in the case of *Hayward* v. *National Bank*, 96 U. S. 611, 618, this court said that a party's poverty or pecuniary embarrassment was not a sufficient excuse for postponing the assertion of his rights. So that this alleged promise of the defendant can in no way avail the complainant in the present case, either as a ground on which to predicate any claim for relief or as an estoppel upon the defendant from denying the validity of the patent.

In addition to these difficulties in the way of the complain-

ant succeeding in this case, his alleged invention was clearly anticipated by the prior use and sale of liquid glue, or size, used for various purposes, including that of coating barrels. The patentee's claim of novelty is based upon the theory that prior to 1873 and 1874 oil barrels were lined with the ordinary glue of commerce dissolved into a hot liquid glue of the proper consistency, and that the discovery made by him, after repeated experiments, was that the same effect could be accomplished, with better and less expensive results, by using the hot liquid or "glue soup" at a proper consistency in the process of manufacture, before it had been prepared for commercial purposes by drying; and that by the use of "glue soup" labor, expense, and the loss incident to the process of drying the jelly glue, so as to render it marketable in that shape, were avoided. In other words, the claim of invention in his patent is, that previous to his discovery the process in lining barrels with glue had been to melt the dried glue of commerce and pour it into a barrel, close up the barrel, and roll it around until the inside surface thereof was thoroughly coated; and that his discovery made it cheaper for the oil people to manufacture their own glue and use it in the same manner, but before it had been dried.

This use of the liquid glue before drying differed in no essential respect from the use of the liquid glue which had been obtained by melting the dried glue of commerce, and certainly does not rise to the dignity of invention. It would have occurred, and did occur, as the testimony shows, to manufacturers of glue where there was occasion or necessity for using glue in large quantities. The alleged invention was properly held by the court below to be a commercial suggestion that would naturally occur to any one engaged largely in the use of glue. It was well known that liquid glue had these coating and sticking qualities before it had ever been dried for commercial purposes, and to use it in its liquid state certainly did not embody the quality of invention. The only object or reason in drying the glue at all is to preserve it for transportation and commercial purposes, it being in its liquid or jelly condition susceptible to atmospheric influences under

the operation of which it is more liable to be spoiled than when dried. It may be true, as claimed, that the adhesive qualities of glue before it is dried are somewhat superior to what they are after the glue has been dried, and then remelted for actual use. But this is merely a question of degree, and the application of the "glue soup" before drying cannot properly be called a discovery, such as involves the exercise of the inventive faculties.

But aside from this, and even admitting that such a discovery and use of liquid glue would involve invention or patentable novelty, it is clearly established by the evidence in the record that there had been such a prior use of the alleged discovery as to preclude the issue of any valid patent covering it. Whatever advantages there may be in using liquid glue, or "glue soup" before it is dried, over a similar use of remelted dried glue, were well known prior to the date of the complainant's application for the patent in question. It is shown by the testimony that in various general publications and trade journals published in Germany in the years 1869, 1870, and 1871, and circulated in this country, the advantages of using hot or liquid glue are set out, as well as the description of the manufacture of glue jelly by different parties and in different localities; and from extracts produced from these journals, which are standard authorities on chemical industries, and contain information on the subject in question, it is shown that manufacturers in Germany were making and selling liquid glue in its jelly form for the same purposes and uses for which the glue in its dried form is ordinarily used; and that it was considered better and cheaper to use it in that condition rather than go to the expense and labor of first drying it. In the glue industries, both in this country and in Germany, the fact was well recognized that the adhesive qualities of glue, before it was dried, were superior to what they were after the glue had been dried for commerce, and that by using it before drying there would be a great saving of time, expense, and loss. It was shown that in some instances the glue jelly was prepared and put away in hermetically-sealed casks for commercial use in the future.

In addition to these publications relating to the use of "glue soup," it is shown that glue in that state or condition had been used in the extensive glue factory of Peter Cooper & Company, at Williamsburg, (now a part of Brooklyn,) New York, as early as 1859 or 1860. It is proven that in the Cooper factory barrels used for the purpose of shipping neat's foot oil were lined or coated with hot liquid glue, that had never been dried, substantially in the same manner, and by the identical process described in complainant's patent. In fact, the process on which he claims a patent was well known at that factory long prior to the date of his alleged invention, and no one seems to have had any idea that it was either new, or could be considered such a secret or discovery as involved invention, or was entitled to protection.

It is furthermore shown by the testimony that precisely this same process of lining oil barrels with hot "glue soup," was used in the oil regions of Pennsylvania and Ohio as early as 1861.

It is not deemed necessary to go into this evidence more in detail. It is not successfully impeached or contradicted by the complainant. In addition to this, the complainant concedes in his own testimony that his "glue soup" is the same thing as "sizing," which was in use long prior to the date of his invention by manufacturers of writing and wall paper.

It being thus clearly established that the use of liquid glue was well known to glue manufacturers and oil refiners, and had been actually applied in the very way and for the very purposes described by the complainant, long before the date of his alleged invention, it is too clear for discussion that he could have no valid patent which would cover a process for using liquid glue for coating or sizing purposes as a new discovery or invention; and our conclusion, therefore, is that the decree of the court below was clearly correct, and should be                                                          *Affirmed.*