**NAGY v. L. MUNDET & SON, Inc.**

No. 8405.

District Court, E. D. New York.

June 7, 1938.

Gustave R. Thompson, of New York City, for plaintiff.

Duell & Kane, of New York City (Holland Duell, David S. Kane, and Philip T. Dalsimer, all of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This is an action for the alleged infringement of Patent No. 1,580,670 issued by the U. S. Patent Office to Berthold Nagy for Delivery Mechanism for Bottle-Cap-Assembling Machines, granted April 13th, 1926 on an application filed February 10th, 1922.

This action is based upon all the claims of the Patent with the exception of claim 18.

Each of the claims so relied upon, except claim 17, is limited to an intermittently rotatable transfer mechanism. Claim 17 is broad enough to cover structures in which such mechanism moves continuously.

The plaintiff, who is the patentee of the Patent in suit, is suing in person. He is engaged in the manufacture of specialty machinery for use in connection with the manufacture of crowns with a plant located in Brooklyn, New York, within this district.

The defendant is a manufacturer of diversified cork products with a crown manufacturing division with a plant located in Brooklyn, New York, within this district.

During the trial, the plaintiff, with the consent of the defendant, was allowed to amend his complaint to include Mundet Cork Corporation, successor in interest to L. Mundet & Son, Inc., as party defendant.

Caps, mentioned in the Patent in suit, and hereinafter referred to as "crowns", are metallic closure members used principally to seal glass bottles holding carbonated beverages. They consist of a metallic shell with a crimped periphery and containing a cork insert which provides a cushioned seal between the pouring lip or mouth of the bottle and the metal shell when the latter is constricted about the neck of the bottle.

As described by the patentee in the specification of the Patent in suit, the invention is stated to relate as follows:

"My invention relates to delivery mechanisms for bottle-cap-assembling machines, and more particularly to a construction and arrangement of parts which will permit a slow movement of the completely assembled caps adjacent the finishing head of the machine, without reducing the capacity of the machine."

The delivery mechanism of the Patent in suit relates to a sorting table used as an accessory to a machine for assembling cork inserts within the metallic shells to form completed crowns. The crowns proceed, cork side up, from the circular rotating head of the assembly machine, in single file, along a narrow conveyor belt, moving at a speed substantially the same as that of the rotating assembly head, to a point at one end of, and above the end of a wide slowly moving sorting or inspection belt. At that point a seven-bladed intermittent, rotary transfer mechanism, quite similar in appearance to a paddle wheel, which is mounted above the narrow fast moving conveyor belt with its axis along the direction of travel thereof, moves a sufficient distance to wipe or push a row of six or more crowns from the narrow belt on to the wide slow moving belt. The wide slow moving belt being at right angles to the narrow belt, receives the crowns, thus transferred in parallel transverse rows. The transfer mechanism thereafter continues its intermittent rotation, each time the distance of one blade, and repeats its operation of transfer of crowns from the narrow fastly moving conveyor belt to the wide slow moving one. An operator inspects and removes defective crowns from the sorting belt before they reach a receiving bin which is customarily located at the far end of the belt.

Conveyor system sorting tables of this general type were old, as appears from the specification of the Patent in suit, Page 1, Lines 21 to 32.

There is some difficulty in determining from a reading of the Patent, what the Inventor may have considered to be his particular invention. It may have been that he thought the real location of the inspection belt was the basis of the invention.

On the trial, and in his brief, the plaintiff contends that his invention consisted in taking machine elements and combining them in such a way that he obtained a machine for examining or inspecting crown-caps which was more simple and compact than any then available, and then, of far greater importance, he so arranged and adopted the examining apparatus with relation to a machine for assembling crown-caps, that he made it possible for one operator to do the work theretofore done by two.

While there is mention in the specification of the patent in suit, of the fact that one operator may inspect the caps, and be in a position where, in an emergency, the machine may be instantly stopped, it does not seem to me that that represents the invention of the Patent in suit.

The claims sued on are all directed to the delivery mechanism alone, and not to a combination of such mechanism and bottle cap assembling machines.

Claim 18, the only claim not sued on, is for a complete assembling machine and sorting table combination, therefore, it does not seem to me that the saving in the number of operators necessary to handle a complete assembling machine and sorting table combination, can be the basis of the invention, as to the claims on which this action is based.

Before disclosing the prior art, attention should be given to the acts of this defendant, as plaintiff has given considerable attention thereto.

In 1923, some three years prior to the issuance of the Patent in suit, the defendant purchased from the plaintiff, a sorting table, which it is claimed embodied in substantial identity, the disclosure of the Patent in suit. After operating the sorting table for a test period, defendant installed additional tables of the same general type, which after competitive bidding was secured from an independent source, for use with its crown assembling machines.

The sorting tables, so purchased and installed, were operated by the defendant for some period of time.

It was not until July 1937, that the defendant had knowledge of the Patent in suit. Notwithstanding the fact that the plaintiff was in defendant's plant in 1933 and saw the alleged infringing tables in operation at that time, he did not notify the defendant of his Patent.

Plaintiff attempts to blame his failure to call his Patent to the defendant's attention, on lack of funds. That is not, however, a good excuse for his delay.

This case differs from the ordinary case where plaintiff notifies defendant of his rights and thereafter fails for a considerable period of time to take action. In this case the Patentee failed to notify the alleged infringer of his Patent, even although he saw the alleged infringing sorting tables in operation in defendant's plant subsequent to the granting of his Patent, and knew they were not of his manufacture.

■ Plaintiff was doing business continuously with the defendant during all of the period of time mentioned, and received substantial sums of money from defendant, as a result, therefore, it seems to me that plaintiff's plea of poverty is not supported by the evidence, but even if it were, poverty is no excuse for delaying filing suit. Leggett v. Standard Oil Company, 149 U.S. 287, 294, 13 S.Ct. 902, 37 L.Ed. 737; Hayward v. National Bank, 96 U.S. 611, 24 L.Ed. 855; Gillons et al. v. Shell Co. of California, 9 Cir., 86 F.2d 600, 606.

■ In any event, however, it does not seem to me that plaintiff can, on the ground of poverty, excuse himself for failure to notify defendant of his Patent, and the claimed infringement. Surely, defendant, if notified of the existence of plaintiff's Patent, would have been in a position to determine whether to continue the use of its then existing machines or change their construction.

■ The plaintiff was guilty of laches, and the objection raised by plaintiff that laches has not been pleaded as a defense does not preclude defendant in this instance, as special pleading of laches is not necessary. Richards v. Mackall, 124 U.S. 183, 8 S.Ct. 437, 31 L.Ed. 396; Westinghouse Air Brake Co. v. New York Air Brake Co., C.C., 111 F. 741.

■ It may be, as plaintiff contends, that no damage has resulted from defendant's reliance upon plaintiff's failure to act, but it is undoubtedly true, however the matter may be viewed, that plaintiff, even if entitled to injunction, could not recover any damages from the defendant for the possession and use for the alleged infringing articles prior to the time when he gave notice of the alleged infringement to the defendant. This is further supported by the fact that the evidence, as to the marking of the articles sold by the plaintiff, under the Patent, is not convincing.

Defendant contends that the patented structure is inoperative, and was allowed during the trial, to amend its answer, alleging that the Patent in suit is invalid, because of its inoperativeness.

While it is true that the defendant found it necessary to equip plaintiff's tables with a spring brake cooperating with the rotary transfer device to prevent the overrunning from occurring, I am not prepared to find that plaintiff's Patent was inoperative because of the absence of the brake, but I am convinced that the change was effected by defendant for functional rather than legal reasons, and this is especially true when you consider that the new type of transfer mechanism was installed initially, long before defendant learned of plaintiff's Patent.

Claim 17, of the Patent in suit, is the broadest claim, and reads as follows:

"17. An attachment for a machine for making and assembling bottle caps comprising a delivery belt, means adapted to guide and actuate said delivery belt adjacent the assembly wheel of said machine, means adapted to cause the movement of the caps from the said assembly wheel to the said delivery belt, an examining belt,

means adapted to guide and actuate the said examining belt more slowly than the delivery belt and at an angle to the said delivery belt and adjacent the said delivery belt, and means adapted to move the caps from the said delivery belt to the said examining belt."

The description of the Prior Art contained in the specification of the Patent in suit lines 21 to 33, would seem to be sufficient to invalidate that claim or at least so limit it that the words "intermittent movement" will have to be read into the claim and thus limit its scope.

The depositions of the witnesses, Erhardt, Sullivan, Szabo and Gassman, sufficiently establish a prior use, which anticipates claim 17.

It is true that no structure was produced, but the affidavits clearly describe the structure and I see no reason to doubt, that four years before the filing date of the Patent in suit, sorting tables attached to crown assembling machines which were provided with a delivery belt adjacent the assembly wheel of the machine from which the crowns passed in single file onto the delivery belt and then were transferred by a means of a continuously rotating paddle wheel transfer mechanism were in successful commercial operation and that the crowns, or caps, were transferred onto a wide belt on such structure moving more slowly than the delivery belt, and beneath and at right angles to it, and were positioned in transverse rows on said widened, slow moving, belt.

Even if there be any doubt, as to anticipation, by said prior use, the Patent to McManus No. 1,444,515 discloses a sorting table which is referred to in the said public use testimony. The Patent to McManus, it is true, was cited by the Patent Office, during the pendency of the Patent in suit, but in spite of that fact, it seems quite clear to me, that the sorting table disclosed in the McManus Patent is the same apparatus as that embraced by the public use testimony and the stipulation as to McManus.

Whether claim 17 be anticipated, or not, I can not find that the novelty, if any there be, in that claim, rises to the dignity of invention.

As to the remaining claims, on which claim 1 reads as follows:

"1. In connection with a bottle cap assembling machine comprising a rotary finishing head, the combination of a delivery mechanism consisting of a narrow conveyor belt running with a speed substantially corresponding to the angular speed of the finishing head and being laterally disposed to the same so as to receive the assembled caps dropping from the said finishing head, a wide conveyor belt, running at lower speed than the narrow belt and at a right angle to the same, having one end closely adjacent to the narrow belt, means directly and simultaneously actuating said belts, an intermittently rotary transfer device above said narrow belt, and means cooperatively connected with aforesaid belt actuating means for intermittently actuating said transfer device, whereby caps upon said narrow belt will be simultaneously removed therefrom in groups and delivered to said wide belt."

It does not seem necessary to consider separately each of the claims sued upon, as each claim deals with what appeared to me to be insignificant structural details of the conveyance system, and claim 1 fairly presents the important details of the system.

The defendant offered in evidence, as the Prior Art relied on, a number of Patents with the arrangement of a narrow fast conveyor belt, positioned above and at right angles to a wide slow moving belt, with means to transfer the articles moving on the fast narrow belt in groups, or rows, to the slow moving belt.

While it is true that in a majority of cases the Prior Art Patents were concerned with leers for annealing glass articles that have just been formed from molten glass, in so far as the conveyance system is concerned, they function the same as the Patent in suit, and I see no difference in the operations of the apparatus employed, with respect to the treatment of the materials or articles conveyed from that employed in the Patent in suit.

The Prior Art generally, while it may not completely anticipate the claims sued on, so limit the subject matter, that it fails to rise to the dignity of invention.

We are not, however, limited to the Prior Art generally, but in addition, there are presented particular Patents which defendant contends anticipate the Patent in suit.

Reference has been made to the McManus Patent No. 1,444,515, which, as I read it, discloses the same arrangement employed by the Patent in suit, except that the paddle wheel transfer mechanism for

moving the crowns from the fast moving narrow belt to the slow moving wide belt is continuous and not intermittently rotated.

Experience has taught the defendant that such continuous movement is more desirable than the intermittent movement and all of defendant's machines now operate with continuous motion at the point of transfer from the narrow to the wide belt.

Plaintiff attempts to distinguish the McManus Patent on the ground that as it is presented in the Patent drawings, the McManus Patent requires two operators and not the single operator required in the Patent in suit.

The plaintiff has not, in my opinion, succeeded in such attempt, as no claim of the Patent in suit limits the location of the sorting table with respect to the assembling table, therefore, each of the claims in suit of the Patent in suit apply equally to the McManus structure particularly that shown in Fig. 2 of the McManus drawing. Furthermore, as the cork disc hopper of the McManus machine is located adjacent the sorting table, both units could be supervised by a single operator. This more clearly appears, when you consider that the Patent in suit deals with a sorting table and not with an assembling machine in combination with a sorting table, therefore, but one operator would be required for the sorting table of the McManus Patent as well as in the Patent in suit.

The Patent to Seely, No. 967,449 which relates to tin cans, shows means for transferring them, as they are received singly from a trackway from a moving belt, in rows, by means of a rotating paddle wheel, as shown by Fig. 1 of the drawing of that Patent. A narrow transverse belt, running at high speed, is not shown, but its equivalent is, as are all of the other elements of the disclosures of the Patent in suit, except the intermittent movement of the rotary transfer, which is not shown.

The Olson Patent, No. 1,038,784, shows in Fig. 1 and 2 of the drawing, the narrow rapidly moving belt D for receiving loaves of bread singly, and an intermittently operated transfer device K for pushing a number of the loaves of dough so received, simultaneously into a container F, which is part of an endless belt E.

The Patents to Lents, No. 1,289,208; Mayers, No. 1,338,240; McNaught, No. 1,363,609 and Purcell, Nos. 1,431,895 and 1,454,520, as well as the Owens Patent No. 1,455,966 disclosed the same general system of conveying. The details disclosed in the Nagy Patent is practically the same as those of the Patents last enumerated, except that in them, a leer mechanism is involved.

Each of them show a rapidly moving narrow belt, the taking articles in single line and an intermittently operated transfer device for moving the articles from the narrow belt in rows on to a wider and slower moving belt. The difference between them and the Patent in suit is that while the transfer is intermittent, it is not rotary.

The novelty of the Patent in suit, as contended for by the plaintiff, does not seem to me to rise to the dignity of invention, and this is clearly true with reference to the use of the intermittent movement of the transfer mechanism, instead of the continuous movement of the identical mechanism in the prior structures.

I can not see that the disclosure of the Patent in suit does more than show another way of accomplishing the result of McManus, and even then, in a less, rather than a more efficient manner.

The Patentee of the Patent in suit has selected well known devices in the Prior Art to accomplish an obvious purpose, but I do not see that the arrangement represents any real advance in the Art, nor does it rise to the dignity of invention.

The rearrangement of the Patent in suit seems to me to represent only the work of a skilled mechanic based upon the Patentee's experience. Newcomb, David Co., Inc., v. R. C. Mahon Co., 6 Cir., 59 F. 2d 899; Altoona Publix Theatres, Inc., v. American Tri-Ergon Corporation et al., 294 U.S. 477, 486, 55 S.Ct. 455, 458, 79 L.Ed. 1005; Sloan Filter Co. v. Portland Gold Min. Co., 8 Cir., 139 F. 23, 26.

There was no long attempt to solve any known problem, but simply a grouping of elements well known to the Prior Art, to accomplish a well known object, in a way in which it had been accomplished before, the principal change suggested being the use of an intermittent movement of the transfer mechanism in place of the continuous movement, and this, in view of the evidence, does not seem to be even an improvement.

The attempt to sustain invention by the alleged economy of operations of one

548

person instead of two, is not impressive, because, as I read the McManus Patent, the same thing could have been accomplished by rearrangement of the position of the sorting table, which would not be prevented by any limitation of the McManus Patent.

All of the claims in suit are invalid for want of invention.

A decree may be entered in favor of the defendant against the plaintiff dismissing the bill of complaint on the merits with costs.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the Court as provided by Rule 70½ of the Equity Rules, 28 U.S.C.A. following section 723, and Rule 11 of the Equity Rules of this Court.