## C. F. BURGESS LABORATORIES, Inc., v. COAST INSULATING CORPORATION.

### No. Eq–1027–J.

District Court, S. D. California, Central Division.

May 9, 1939.

Lyon & Lyon, of Los Angeles, Cal., for plaintiff.

Collins Mason and Julius V. Patrosso, both of Los Angeles, Cal., for defendant.

JAMES, District Judge.

The art to be considered in this case is within the field of acoustics; particularly as it has to do with sound wave diffraction in relation to the absorption of sound in walls or ceilings. It has long been the purpose of builders to do two things; so construct division partitions, ceilings or walls that (1) sound created within a room will be absorbed in the wall and not reflected, and (2) that the sound-absorbing effect, when accomplished by sound-deadening means, will prevent the transmission of such sound through the intervening material into adjacent space. Generally, it may be said that if the first of the effects mentioned is attained, the second effect follows. In other words, if you place sound-absorbing material within a partition wall, and it performs its intended purpose of deadening sound, it also prevents reflection of the sound. If insulation only is to be accomplished by reflection, that is a different matter.

Necessarily, if a firm, non-porous, non-perforated wall finish is applied, there is no sound absorption. Insulation against penetration of sound through the wall is accomplished, but reflection results within the room.

First of all, it was long a subject of common knowledge that a padding of felt, wool, or other similar material familiar to builders, spread over walls or between supports, would kill sound created within a room and hence prevent its reflection. If widely spaced metal or other hard strips, or screen wire, were used to hold it in place, the method would be within the common knowledge of the trade at all times. So it is clear that improvement in the art (as here involved) would have for its object the providing of a smooth and firm material that would give a finished surface to a wall, and permit the sound waves originating within the room to reach and be absorbed by the wool or other backing, without exposing the latter to view.

Norris, assignor of plaintiff, on August 27, 1929, secured a patent (No. 1,726,500) on a method or process which he called "sound-deadening construction" which permitted of a finished surface of walls (or ceiling) of a room and at the same time allowed the sound waves to reach, and be absorbed by, the underlying soft material. This result was obtained by using a metal surfacing material with small holes cut in it, although the surfacing material was not limited to metal. Norris found that the absorptive action of the underpadding was almost, if not quite, as great as though the padding were fully exposed to the sound waves without any intervening covering. Quite plainly his purpose was to provide sound absorptive quality in combination with a smooth hard surface, that would present a finished appearance, be suitable for decorative treatment and at the same time prevent the felt, wool or other material back of it from being seen. In his patent he states, "One object of the invention is to provide a sound-absorbing installation which combines the high efficiency of the most effective types of loosely fabricated porous material with the mechanical and decorative advantages of hard steel material, such as sheet metal, as a means of concealing the sound-absorbing material or as a means of supporting it as well. (2) * * * A contributory object is to provide a facing for sound-absorbing materials which is durable, gives unlimited service, is easy to clean, decorate and redecorate or paint any number of times without interfering with its efficiency, is good looking, reflects light well, has a reasonable first cost with a minimum of upkeep, is fireproof, and is verminproof." All of the last stated (2) advantages were incident to any of the many unperforated wall coverings commonly used by the building trade for many years.

From what has been stated, it must appear clear that Norris, merely because he provides for the use of metal or hard material, can claim no novelty which would establish his patent right, if we disregard the size or number of the holes which might be put through his wall covering. The prior Dillon patent (No. 1,385,741) issued July 26, 1921, covered perforated textile material for use in securing sound-deadening effect in walls or ceilings of rooms. Judge Knox, in Guaranty Trust Co. v. Johns Manville Corporation, D.C., 14 F.Supp. 792, held that Dillon did not anticipate Norris, but remarked that he could not classify Dillon's invention as pioneer in the art. He attributed improvement to Norris.

The claims of the patent are numerous, both broad and narrow, all-embracing and restricted, and drawn undoubtedly by an able solicitor "skilled in the art."

The particular claims asserted to have been infringed by the defendant are the following:

"1. In the combination of sound-absorbing material and a facing therefor, a thin

sheet of perforated metal forming such facing, the ratio of the unperforated area of said sheet to the openings therein being such as to expose an apparently substantially continuous surface to the sound waves.

"3. In the combination of sound-absorbing material of high efficiency and means for confining and concealing the same, a thin layer of self-sustaining-non-sound-absorbing perforated material, constituting such means, the openings therein being widely distributed over the area exposed to the sound waves and small enough to substantially conceal the sound-absorbing material.

"4. In the combination of sound-absorbing material of high efficiency and means for confining and concealing the same, a thin layer of self-sustaining, non-sound-absorbing perforated material, constituting such means, the openings therein being widely distributed over the area exposed to the sound waves and the aggregate area of said openings, totaling not more than about 16% of said first area.

"5. Sound-absorbing means comprising, in combination, sound-absorbing material and a thin-stiff member contiguous thereto with a plurality of openings therein, the ratio of openings to the area of said member being such as to expose an apparently substantially continuous surface to the sound waves.

"6. A sound-absorbing structure comprising sound-absorbing material and a thin-self-sustaining material concealing the same with a multiplicity of small openings therethrough of average dimensions greater than the thickness of said self-sustaining material.

"8. Sound-absorbing means comprising, in combination, thick porous material having high capacity for sound absorption, and a thin, dense, perforated material having less sound-absorbing capacity, the spacing of the openings in said perforated material, as specified herein, bearing such relation to the length of the sound waves passing therethrough as to provide a combined sound-absorbing efficiency as great as that of said high capacity sound-absorbing material.

"10. The combination with sound-absorbing material having an efficiency in excess of 70% of thin, dense, foraminous material having an efficiency less than 25%, forming a facing therefor, the openings in said dense material being spaced, as specified herein, to permit the transmission of sound waves in such manner as to result in an efficiency in the combined materials in excess of that of said sound-absorbing material.

"11. Means for deadening sounds reflected from a hard surface, comprising a layer of sound-absorbing material between the source of sound and said hard surface, and perforated sheet metal adjacent said sound-absorbing material between it and said sound source, the openings in said sheet metal being substantially uniformly distributed over its surface, and having a total area less than the unperforated area of said metal.

"14. A sound-absorbing structure as in claim 6, in which the openings cover about .4% to 35% of the total area."

Additional claims 16, 17 and 23 include methods of attachment of the wall finishing material, and these will not be separately or particularly described, as I do not believe the evidence shows that defendant used the same form of fastenings.

Would not an experienced builder know that if the perforations in wall finishing were so numerous as to leave remaining little of the base material (sufficient, nevertheless, to preserve the smooth level of the wall surface), that under the known rule of acoustics, deflection of the sound waves would be accomplished? It would seem that he undoubtedly would know it. From what has been said it may be clearly inferred, that using whatever material the builder chooses for wall facing, if apertures of large size are cut in the same, sound will be absorbed, but the sound-deadening material will be revealed. So, to my mind, such discovery as Norris made (Claim 4) was that with perforations in the wall material not exceeding 16% of the surface, the same desired result would be obtained. It may be concluded that it had not been within the knowledge of builders that such a minimum of apertures in combination with sound-deadening backing would work successfully. Within the teachings of the patent, Claim 4 is conditioned upon thin surfacing material with small holes or openings which will not expose to view the sound-deadening material, under ordinary observation short of close scrutiny. The word "thin" I believe may be interpreted within the building art and the subject of this patent as referring to sufficient thickness only as to enable the material to maintain a rigid smooth surface in place.

The patent in suit is exceedingly narrowed in its scope by the prior art. Delaney, Dillon and Mazer, in their several patents, were in the same inventive field; but without particularly discussing the patents referred to, I am of the opinion that Norris had discovered something under his Claim 4 which is maintainable as a patent right. Claim 1, I think, embraces too much, is too broad and general and not specific enough in its details, in view of the prior developed art. Cases such as General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402; M. Swift & Sons, Inc. v. W. H. Coe Mfg. Co., 1 Cir., 102 F.2d 391, and many others, state the elementary rule. Likewise, Claims 3 and 6. Claim 8 involves the use of a surface material which in a measure has capacity for sound absorption. Claim 5, likewise, does not exclude sound absorptive facing. I think that the invention is entitled to recognition and must be sustained alone upon a wall material which in itself has no sound absorptive quality, with holes as described in Claim 4. Claims 5 and 8 are therefore invalid. Claim 10, also, I hold is too general. Likewise, Claim 11. Claim 14 extends the perforated area from .4% to 35%, and does not exclude sound absorptive material in the facing, therefore it is invalid.

Of course, on the 16% area as noted, that area is not absolutely limited to 16%, but it must closely approximate that; a fraction of 1% over should not be considered as excluding patent protection; patents must be given not only reasonable construction as to their interpretation, but also be reasonably construed in their application.

As to the size of the holes coming within the patent protection, I think such are well illustrated by plaintiff's Exhibits 40 and 41 (Masonite material). Holes exceeding these sizes would undoubtedly bring into view. the sound-deadening backing; even at distances as far as ten feet. The Masonite sample of defendant's manufacture (Plaintiff's Exhibit 9, Defendant's Exhibit R (Defendant's Int. Ex. 19), I believe shows a form which infringes plaintiff's patent right under Claim 4. I am unable to find infringement as to any of the other forms shown.

Findings and interlocutory judgment will be for plaintiff in accordance with the conclusions as indicated. Injunction will issue to restrain further infringement, and David B. Head is appointed as special master to take an accounting and report the amount of money for which plaintiff shall have final judgment. An exception is noted in favor of all parties.