## DELANEY PATENTS CORPORATION v. JOHNS–MANVILLE et al.

No. 1328—Y.

District Court, S. D. California, Central Division.

Sept. 28, 1939.

432

Hill, Morgan & Bledsoe and Kenneth K. Wright, all of Los Angeles, Cal., and Oscar A. Mellin, of Oakland, Cal., for plaintiff.

Clair W. Fairbank and Virgil Kline, both of New York City, and Lyon & Lyon, of Los Angeles, Cal., for defendants.

YANKWICH, District Judge.

Plaintiff, as the owner of Letters Patent No. 1660745 by Delaney, issued on September 28, 1928, claims that the product known as "Sanacoustic" tile, manufactured by the defendant Johns-Manville Sales Corporation, infringes claim 1 of the patent which reads: "(1) An acoustic block comprising a shell having a perforated facing and a filling of sound-absorbing substance."

The patent in suit is in the field of acoustic building materials in which progress has been rather slow and in which the prior art is very extensive.

The combination of a perforated facing enclosing a sound-absorbing material to allow penetration of sound to the sound-absorbing material to be there absorbed is old in the art. Mazer in Letters Patent No. 1172379, issued February 22, 1916, provided an open box-like frame enclosing sound-absorbing material. Dillon, in Letters Patent No. 1385741, issued July 26,

1921, combined an exposed perforated fabric membrane covering a sound-absorbing material. Guastavino, in Letters Patent 1440073, issued December 26, 1922, achieves the same combination by using a facing of a porous natural stone having intercommunicating pores opening through the exposed face thereof to a sound-absorbing material. Mazer, in Letters Patent No. 1483365, issued on February 12, 1924, provided a non-refractory block containing regular openings reaching from the surface to sound-absorbing material enclosed in it. Trader, in Letters Patent No. 1554179, and 1554180, issued on September 15, 1925, provided a sound-absorbing material such as cellotex, the face of which was partially perforated allowing the sounds to reach the solid absorbing material back of the perforations.

It is the claim of the plaintiff that Delaney first taught the combination of a self-sustaining sound deflecting shell having a perforated facing and a filling of sound-absorbing substance.

This broad interpretation would make the claims of this patent, especially claim 2, which is worded: "An acoustic block comprising a porous shell and a sound absorbing filling", read on both Guastavino and Mazer No. 1483365. For Guastavino relies on the natural porosity of a stone to obtain his perforated surface, as does Delaney in claim 2. And Mazer No. 1483365 relies on regular perforations obtained artificially to achieve the same end.

If the claim of Delaney is read in conjunction with the disclosure in the specifications, it is evident that what he had in mind is what the claims call an "acoustic block". And to illustrate what he means by "block", he says in the specifications: "the object of this invention is to provide in the construction of such auditoriums or rooms an interior surface in the form of blocks or slabs, *which may be laid in similar manner to a brick wall,* and which will perform every function of the felt or velour hangings before mentioned and at the same time will insulate such rooms from exterior sounds." (Emphasis added)

The materials which he prefers for the manufacture of the blocks are plaster, cement, fibrous material, wood, terra cotta, *"or in some instances, metal"*. It is evident from this that what he had in mind was shells or blocks in the nature of tile which would be laid on top of one another like bricks. A block is defined in Webster's New International Dictionary (1937): "A piece of wood, stone, or the like, more or less bulky, *usually solid,* and usually with one or more plane or approximately plane faces, as a block on which a butcher chops his meat; a block by which to mount a horse; children's building blocks, paving blocks".

A shell is defined as: "Any flat, hollow structure, *frame work or exterior structure* that is frail in construction or that has had its interior removed or destroyed or is regarded as not complete or filled in, as the shell of a house or ship."

Delaney clearly contemplated a hollow structure *completely enclosed,* in which the sound-absorbing material was sealed. This is the claim which his attorney pressed before the Patent Office, as appears from the file wrapper. Under date of April 19, 1927, he wrote: "The constructions illustrated and described in the patents are manifestly *not the equivalents of applicant's* block, as the latter comprises a *shell* having sealed therewithin a *sound absorbing filler* and one of the walls being perforated. One of the advantages of such construction, is that the blocks are acoustic units and individually have sound absorbing properties and when assembled, may be used to construct enclosures of different sizes. No citation shows or suggests a shell having a *perforated face,* the perforations opening into the interior, so that the sounds impinge against a sound deadening substance contained in the shell.

"Shaw, Mazer, and Guastavino disclose the broad idea of sound absorbing structures in the form of slabs and wall coverings, but the same are not in any manner the equivalent of applicant's *acoustic* block construction." (Emphases in text)

When an invention is close to the prior art, the only way to save it from invalidity is to limit it within the narrow scope of what the claims describe. Boyd v. Janesville Hay-Tool Co., 1895, 158 U. S. 260, 267, 15 S.Ct. 837, 39 L.Ed. 973; H. Brinton Co. v. Mishcon, 1937, 2 Cir., 93 F.2d 445. Claims, of course, are to be read in the light of the entire disclosure of the patent. And the proceedings in the patent office, while not always amounting to estoppel, acquire a special significance when a broader claim than is warranted by the language is made later. They evidence the contemporaneous intention of the inventor. See Computing Scale Co. v. Automatic Scale Co., 1907, 204 U.S. 609.

27 S.Ct. 307, 51 L.Ed. 645; Hauser v. Simplex Window Co., 1926, 9 Cir., 10 F.2d 457. This is especially true when we are dealing, *as we do here,* with what may be called a "paper" patent,—i. e., a patent which never went into practical use. Deering v. Winona Harvester Works, 1894, 155 U.S. 286, 15 S.Ct. 118, 39 L.Ed. 153; Henry v. City of Los Angeles, 1919, 9 Cir., 255 F. 769, 780; Wire Tie Machine Co. v. Pacific Box Corp., 1939, 9 Cir., 102 F.2d 543; Dillon Co. v. Continental Supply Co., 1938, 10 Cir., 98 F.2d 581, 587. The evidence is undisputed that *no structure under Claim 1 of the patent,*—the patent in suit,—*was ever made.* No specimen either of a commercial or experimental character has been produced in court or testified to. The only two installations testified to were made in 1929. They were made under claim 2 of the patent.

Under the circumstances, the facts call clearly for a narrow construction, especially when we are confronted with an assertion of infringement made many years after the successful development by the defendant of a structure of its own, while the Delaney application was pending and before the letters patent issued, and which was announced to the trade in a publication dated December 15, 1927, in the very form in which it is made now and which it is claimed infringes Delaney.

The accused construction is produced by the defendant Johns-Manville Sales Corporation as a licensee under the patent of Norris, issued on August 27, 1929.

The two patents were co-pending. The defendants are, therefore, entitled to the presumption that there was no conflict between the two. Boyd v. Janesville Hay-Tool Co., 1895, 158 U.S. 260, 261, 15 S. Ct. 837, 39 L.Ed. 973; Majestic Electric Appliances Co., Inc. v. Hicks, 1928, 9 Cir., 24 F.2d 165; Hoppenstand v. Mack-International Motor Truck Corp., 1937, 3 Cir., 89 F.2d 360. There was no interference. And the attorneys for Norris, during the proceedings, voluntarily called the attention of the Commissioner to Delaney. Norris' claim of invention is stated in claim 4, recently upheld by my colleague, Judge Wm. P. James, in C. F. Burgess Laboratories v. Coast Insulating Corp., 1939, D. C., 27 F.Supp. 956, 958. (See also discussion of the prior art by Judge John C. Knox in Guaranty Trust Co. of New York v. Johns-Manville Corp., 1935, D.C., 14 F. Supp. 792.) It reads: "4. In the combination of sound-absorbing material of high efficiency and means for confining and concealing the same, a thin layer of self-sustaining, non-sound absorbing perforated material, constituting such means, the openings therein being widely distributed over the area exposed to the sound waves and the aggregate area of said openings, totaling not more than about 16% of said first area."

The method of installation used by the defendants may be described briefly as follows:

Sanacoustic includes an assembly of four units: (a) Tee bars exactly as shown in Figure 5 of United States patent 1738469 issued December 3, 1929, to C. F. Burgess Laboratories, Inc., except that the gripping flanges slightly diverge at their lower edges. The bars are made up in lengths of 8, 10, and 12 feet, and are secured to or suspended from the ceiling or wall in a wide variety of ways.

(b) A perforated sheet metal pan exactly as shown in Figure 2 of the patent 1738469 except that ordinarily, but not always, all four of the side flanges or at least some of them, are perforated the same as the bottom, and all four flanges have grooves lengthwise thereof, whereas in said figure only two of said flanges are grooved. The pans are made in three sizes, namely, 12" x 12", 12" x 24", and 16" x 16". The sheet metal is No. 26 gauge and the holes are 0.068" in diameter in parallel rows on centers spaced about 0.176" apart. When installed, two opposed side flanges are snapped into place between the gripping members of two parallel tee bars of the type above referred to under (a). Some pans are without perforations but otherwise the same as above described.

(c) A pad of rock wool of such size as to loosely fit within the sheet metal pan described under (b), the pad having a sheet of asbestos paper covering the top surface and folded around the peripheral edges, with the marginal portions forming narrow strips around the border of the bottom surface and glued in place and to the edges of a sheet of muslin covering the center portion of the undersurface. Such a pad is of the general type shown in Huffine patent 1984190, issued December 11, 1934, and differs from that illustrated in Figures 1 and 3 in the omission of the elements 16, 18 and 19.

(d) Metal pad supports in the form of a pair of parallel inverted sheet metal chan-

435

nel strips lying loose on the bottom of the pan described under (b) and serving to support the pad described under (c) and space it above the bottom of the pan.

What Norris had in mind is a method of lining walls and ceilings, for sound proofing according to an idea old in the art,—i. e., by concealing an absorbent material behind a perforated face. To aid in keeping the material in place, he provided for upturning the edges of the sheets of metal, thus forming a pan to hold the pad of sound absorbing material. Norris called his invention "sound deadening construction."

What Delaney had in mind was *a block*, wholly enclosed, *like a shell*. It could be laid like bricks. Metal construction *is the very essence* of Norris. Delaney, while saying that the material may "in some instances" be metal, contemplates construction of plaster, cement, terra cotta, and the like.

■ Leaving aside the inherent problem which construction of plaster, terra cotta and the like may, by reason of their weight, present, when applied to ceilings, and assuming that, to some extent, the open pan in Norris performed the same function as the shell in Delaney, this fact does not call for a broad interpretation of Delaney which would find infringement here. We are dealing here with a structural and not with a process patent. Function becomes immaterial. *A patentee cannot, by describing his device in terms of function, extend its scope.* Holland Furniture Co. v. Perkins Glue Co., 1928, 277 U.S. 245, 257, 48 S.Ct. 474, 72 L.Ed. 868; General Electric Co. v. Wabash Appliance Co., 1938, 304 U.S. 364, 371, 58 S.Ct. 899, 82 L.Ed. 1402. Here the patentee in his claims, specifications and in the description of his device in the patent office has narrowed the scope of his contribution to the art. The fundamental, all-important idea underlying the art is the combination of a porous surface and a solid sound-absorbing base back of it, and which allows the sound to penetrate to and dissolve into the sound-absorbing material. In some instances, this is achieved by mere perforation of a sound-absorbing material; in others, by superimposing a sound-deflecting surface upon a sound-absorbing surface. To this fundamental of the art Delaney contributed nothing. He merely devised the means of constructing blocks consisting of a shell enclosed on all sides and holding, inside of it, a sound-

absorbing material. He, himself, says that his invention "relates to the use of *building blocks* for surfacing the interiors of auditoriums, halls, or any rooms in which it is desired to enhance the acoustical properties by providing walls of sound-absorbing and non-reverberating quality." He has thus prescribed the limits of his invention.

■ We should not interpret it in terms of function so as to make it apply to the product of the defendants which was, indubitably, developed under another patent, co-pending with Delaney.

■ The patent monopoly is very valuable. But it should not be extended beyond discovery. To do so would discourage invention. And it is the aim of the patent monopoly *"To promote the Progress of Science and useful Arts."* Constitution of the United States, Art. I, Sec. 8, U.S. C.A.

In the light of these considerations, we find no infringement here.

■ Although the accused product was announced to the trade as early as December 15, 1927, and has been manufactured by its owners and licensees continuously since, the first claim of infringement was not made until early in 1937. The dates on which notices were received were: Johns-Manville Sales Corporation, the licensee, on June 2, 1937; Southern California Telephone Company, on whose buildings in Los Angeles the installations were made in 1929, on December 18, 1937; Lauer and English, Inc., a corporation, agents of Johns-Manville Sales Corporation, in Los Angeles, on February 2, 1938. In the meantime, the business of Johns-Manville Sales Corporation in the acoustic tile field has developed, until, in terms of money, the installation of Sanacoustic exceeds that of any other product in the field. In 1929, negotiations were being carried on between Delaney and Johns-Manville Sales Corporation for the acquisition by them of other patents. No assertion of violation was ever made by him at that time or later. Nor was any made prior to 1937. His death, the subsequent bankruptcy of his estate, the inaction of the trustee in bankruptcy, and the like, *cannot excuse failure to assert a claim. Even a bankrupt estate can assert a claim by causing notice of infringement and to desist to be given.*

Laches is clearly present here, as we have an inexcusable delay, in the face of wide commercial use of a product on a national scale by one who, from the circumstances narrated, cannot be said to have drawn upon the patent in suit for his device. See, 35 U.S.C.A. § 70; Galliher v. Cadwell, 1892, 145 U.S. 368, 12 S.Ct. 873, 36 L.Ed. 738; Leggett v. Standard Oil Co., 1893, 149 U.S. 287, 13 S.Ct. 902, 37 L.Ed. 737; Patterson v. Hewitt, 1904, 195 U.S. 309, 319, 320, 25 S.Ct. 35, 49 L.Ed. 214; Tompkins v. St. Regis Paper Co., 1916, 2 Cir., 236 F. 221, 224; Jones v. Freed-Eisemann Radio Corp., 1931, 2 Cir., 47 F.2d 174, 177; Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co., 1933, 3 Cir., 64 F.2d 185; Gillons v. Shell Co. of Calif., 1937, 9 Cir., 86 F.2d 600.

I find that claim 1 of Delaney as herein delimited is valid but that it is not infringed by the structure of the defendants. I find further that any claim of the plaintiff is barred by laches.

Judgment and findings to be presented by the defendants under local rule 8.