## ARROWOOD v. SYMINGTON–GOULD CORPORATION.

District Court, S. D. New York.
Dec. 31, 1946.

Simon F. Peavey, Jr., of New York City (Simon F. Peavey, Jr., and John J. Cunneen, both of New York City, of counsel), for plaintiff.

Pruitt, Hale and Coursen, of New York City (Fred Gerlach, of Chicago, Ill., of counsel), for defendant.

CAFFEY, District Judge.

This is an action to recover damages only for infringement of six Original and two Re-Issue Patents, issued on various dates from November 20, 1923, to May 3, 1932, covering certain new and useful machinery, devices, methods and processes relating to the firing of furnaces for Metallurgical treatment of various materials with fuel and air mixtures burned in suspension.

The action was instituted on June 21, 1945, and defendant's answer to the amended complaint was filed on April 26, 1946.

The answer contains the usual denials and defenses of invalidity, non-invention, anticipation and non-infringement. It also sets up that the alleged infringing apparatus used by it was devised by one Grindle and patented by him in 1917 and 1919 and made and used by defendant in 1921 and discontinued in 1940. It follows that plaintiff is barred of recovery by his laches.

Defendant now moves to dismiss the amended complaint on the ground of laches, to dismiss it as to certain claims of two Re-issue Patents on the ground of intervening rights, and to dismiss it as to two Patents on the ground that the installation and public use by defendant's predecessor in business during 1921 and 1922 of the apparatus complained of constituted a statutory bar, under Section 4886 of the Pat-

ent Laws, 35 U.S.C.A. § 31, against the granting of these two Patents upon applications filed more than two years after the commencement of such use.

The dates and numbers of the patents involved and the dates when plaintiff, according to his bill of particulars, first learned of the alleged infringements by defendant and first notified it of such alleged infringements, are set forth in the following tabulation:

| Date of Patent | Number of Patent | Date of Knowledge | Date of Notice |
|---|---|---|---|
| Nov. 20, 1923 | 1,474,613 | | No notice |
| Sept. 7, 1926 | 1,598,842 | Sept. 7, 1926 | No notice |
| Sept. 10, 1929 | Re-issue 17,427 | Sept. 10, 1929 | No notice |
| Feby. 15, 1927 | 1,617,510 | Feb. 15, 1927 | July 24, 1931 |
| Dec. 23, 1930 | Re-issue 17,908 | Dec. 23, 1930 | July 24, 1931 |
| Nov. 10, 1931 | 1,831,087 | | No notice |
| Dec. 29, 1931 | 1,838,521 | | No notice |
| May 3, 1932 | 1,856,902 | | No notice |

Neither in his amended complaint nor in his bill of particulars does plaintiff assert knowledge of infringement of any of the eight patents, except the four above set forth. The notice of July 24, 1931, was in the form of a letter to defendant which referred only "to my patent Re-Issue No. 17,908, granted December 23, 1930." In his bill of particulars, however, he states that this was notice of the infringement of each of the patents (although the last three had not then been issued), and that he likewise gave oral notices, the dates of which he cannot specify, and also gave notice by attaching to his apparatus a notice, in legal form, that patents had been applied for.

In his affidavit opposing this motion, he amplifies and says that on or about February 4, 1937, he gave defendant a second notice of infringement by letter, and also gave verbal notice in that month, that its melting furnace and the methods used therein infringed his Re-Issue Patent No. 17,908.

To both letters of July 24, 1931, and February 4, 1937, defendant replied, denying infringement. Plaintiff further says that he installed a number of melting furnaces in 1919, 1920, and 1921, on each of which he placed a metal plate with an inscription that patents were pending. He also admits now that he saw and examined the melting furnaces installed "at the Rochester plant of defendant, in 1922," and observed the melting practices carried on in them. This may be rather ambiguous but it must mean that he saw and examined them in 1922, and not that they were installed in 1922, for it appears from the affidavit of Mr. Barger, who had supervision thereof for defendant, that two of the five furnaces were installed and in operation in 1921 and the others in April and October, 1922.

The five furnaces referred to are the ones which plaintiff charges are infringements. The equipment for all five was purchased from Combustion Economy Corporation or its successor, Grindle Fuel Equipment Company, and they were all installed in defendant's plant at Rochester, New York, in 1921 and 1922, more than 23 years before this action was brought. All five furnaces were successively dismantled, removed and the use thereof discontinued at different times in 1940 and 1941, but not later than November, 1941. There could not, therefore, have been any infringement subsequent to the latter date, which is more than three years prior to the institution of this action.

Defendant claims that these facts constituted such unreasonable delay in the bringing of this action as to amount to laches and to bar plaintiff from any recovery. The only excuse offered by plaintiff

for his delay is that he "had taken steps previously on at least three occasions to file and prosecute a suit against defendant, but in each instance was unable to meet the financial requirements of the attorneys consulted." This, however, is not a sufficient excuse.

In Leggett v. Standard Oil Co., 149 U.S. 287, 294, 13 S.Ct. 902, 905, 37 L.Ed. 737, the court said:

"No sufficient reason is given for this delay in suing [over fourteen years]. It is sought to be excused on the ground of the plaintiff's poverty during this period; but in the case of Hayward v. [Eliot Nat.] Bank, 96 U.S. 611, 618, [24 L.Ed. 855,] this court said that a party's poverty or pecuniary embarrassment was not a sufficient excuse for postponing the assertion of his rights."

See also Gillons v. Shell Co. of California, 9 Cir., 86 F.2d 600, 606.

Plaintiff's counsel argues that mere delay, which, he says, is all that defendant claims, is not enough. In support of his position he relies on five cases, viz., Drum v. Turner, 8 Cir., 219 F. 188, Columbia Graphophone Co. v. Searchlight Horn Co., 9 Cir., 236 F. 135, Baltzley v. Spengler Loomis Manufacturing Co., 2 Cir., 262 F. 423, Frank F. Smith Hardware Co. v. S. H. Pomeroy Co., 2 Cir., 299 F. 544, and Alliance Securities Co. v. DeVilbiss Manufacturing Co., 6 Cir., 41 F.2d 668.

In Dwight & Lloyd Sintering Co. v. Greenawalt, 2 Cir., 27 F.2d 823, 827, the court said (second full paragraph left column and bottom right column):

"It is often said that mere delay will not serve as a bar even to the accounting (citing all the cases relied on by plaintiff, except the last). These cases say that there must be some assurance of impunity, the disappointment of which amounts to an estoppel. We are so to understand the law, and yet it remains true that in most of those cases where relief has been denied no further assurance was given than that arising from the patentee's long inaction. Each year as it passes inevitably builds up a belief, if nothing has been done, that the patentee does not suppose his rights invaded, * * *. The delay of 13 years, not otherwise excused, therefore appears to us fatal to any accounting, * * *."

It appears from the opinion in the Greenawalt case, supra, that the patentee, thirteen years before suit was filed, saw a photograph of a plant in which defendant's alleged infringing apparatus had been installed. The court said (bottom right column, page 826 of 27 F.2d): "We cannot suppose that it did not excite his interest, or that he did not inquire into details, and it seems in every way probable that he then learned of the process then carried on." Here, the facts are even stronger. No inferences are necessary, for plaintiff admits that he saw and observed defendant's equipment and process 23 years before this suit was filed. To quote from his affidavit:

"Deponent saw and examined the malleable iron melting furnaces which were installed by Mr. Grindle at the Rochester plant of defendant, in 1922, and observed the melting practice carried on in these furnaces. The furnace construction and the melting practice carried on therein are in conformity with the description thereof in an article by T. W. Atterbury, in the October 15, 1922 and November 1, 1922 issues of 'The Foundry.'"

In view of the facts that plaintiff, in both his letters of July 24, 1931, and February 4, 1937, limited his claim of infringement to his Re-Issue Patent No. 17,908, and in his opposing affidavit refers only to the original Patent No. 1,617,510, and the claims of the Re-Issue Patent, "relied on in the present suit," I think that it is fair to assume that he does not seriously claim infringement of any of his other patents. Patent No. 1,617,510 was issued February 15, 1927, on application filed August 8, 1921, and Re-Issue Patent No. 17,908 was issued December 23, 1930, on application filed February 14, 1929. Defendant placed its first order for the equipment for its first furnace on February 14, 1921, and it was installed on April 23, 1921. One of its five furnaces, alleged to infringe, was thus in operation about three months before application for Patent No. 1,617,510 was filed and about seven years and ten months before application for Re-Issue Patent No. 17,908 was filed.

Yet, no notice of infringement of either Patent was given until July 24, 1931, nine years after all five furnaces had been put in operation.

It also appears that in 1923 there was an interference proceeding in the Patent Office between plaintiff's application for Patent No. 1,617,510 and an application by Aubrey J. Grindle, filed July 7, 1916, and divided and refiled March 3, 1922, on which Patent No. 1,420,312 was issued to Grindle on June 20, 1922. In this proceeding priority of the claims upon which the claim of interference was predicated was awarded to Grindle, according to his affidavit. Plaintiff, in his opposing affidavit, discusses at some length this interference proceeding and points out that Patent No. 1,617,510 was issued to him, after some amendments, as differing patentably from the issues of the interference. It is unnecessary critically to examine the respective claims. The fact is that both patents were issued and that the Patent Office must have held that the claims in the two patents did not conflict with each other. Plaintiff was not estopped by this interference proceeding or the decision therein, from suing defendant as soon as he learned of its supposed infringement. Dwight & Lloyd Sintering Co. v. Greenawalt, 27 F.2d at page 827 (first full paragraph, right column). Defendant claims that the interference proceedings are pertinent here on the questions of anticipation and priority, but they have been lost in the Patent Office and thus are not available.

Furthermore, the Grindle Fuel Equipment Company published in March, 1922, a catalogue of powdered fuel equipment manufactured by it in which was a photograph of its equipment installed in two of defendant's furnaces. Plaintiff's answer that this photograph "does not disclose in any detail the construction of the furnace * * * or the mode of procedure in practicing any method and in melting malleable iron therein" is of no weight in view of his admission that in 1922 "he saw and examined the melting furnaces * * * and observed the melting practices carried on in them."

Under all these circumstances, the conclusion is that the defense of laches must be sustained and the complaint dismissed. In none of the cases called to the court's attention has there been such a long delay as here—23 years after knowledge of the alleged infringement and 14 years after notice given. Defendant was fully justified in concluding that plaintiff had abandoned its claim.

This conclusion makes it unnecessary to consider the other portions of defendant's motion. Settle order on two days' notice.